[L. A. No. 8252. In Bank.—September 26, 1924.]

GEORGE GIORGIO TUSO et al., Respondents, v. GLEN D. GREEN, etc., Appellant.

[1] CONTRACTS—HOW CREATED.—A contract between two parties is created by a proposal or offer by one of the parties and an acceptance thereof by the other.

[2] ID.—CONTRACT OF SALE—SEPARATELY SIGNED LETTERS.—A contract of sale may consist of a proposal on the part of the seller embodied in a letter signed by him alone, and an acceptance thereof on the part of the buyer embodied in another letter signed by him alone.

---

1.  See 6 Cal. Jur. 47.
2.  See 6 Cal. Jur. 57; 6 R. C. L. 610.

[3] Id.—Separate Writings—Signature—Meeting of Minds.—When the minds of the parties meet, that is to say, when the respective writings of the parties match one another as to subject matter, terms, and conditions, a contract comes into existence between the parties, and when such terms and conditions are stated in writings which are signed by the respective parties the contract is none the less a contract in writing merely because each of the respective writings is signed by but one of the parties. Such a contract in writing fully satisfies the statute of frauds, and in construing the same the separately executed instruments are to be considered and construed together as one contract.

[4] Id.—Sale of Land—Escrow Instructions—Separate Execution of—Construction.—Two escrow instructions, dealing with the sale and purchase of certain premises, made and delivered to a bank at the same time, one of which is entitled "Seller's Escrow Instructions" and signed by the sellers, and the other of which is entitled "Buyer's Escrow Instructions" and signed by the buyer, and coinciding as to description of the premises, purchase price, terms of payment, terms of note and mortgage, provisions for certificate of title, etc., are to be considered and construed together as one contract; and in such situation the mutual stipulations of the parties, the actual conveyance in escrow by one and the promise by the other to pay the price, both being valid, constitute a sufficient consideration and create a valid escrow.

[5] Id.—Action upon Contract—Forfeiture by Buyer—Knowledge of Provisions—Testimony of Escrow Officer—Harmless Error.—In an action by the sellers under such a contract to recover moneys paid by the buyer on the purchase price but alleged to have been forfeited by him, the seller's instructions having provided that if the buyer should default the payments already made should be forfeited to the sellers, conceding that the testimony of the escrow officer as to what was said and done by the parties at the time of preparing and signing the instructions, admitted for the purpose of proving that the defendant at the time he entered into the contract had actual knowledge that the provision for a forfeiture in case of default was one of the provisions thereof, was erroneously admitted, it could not have been prejudicial. The provision for forfeiture was an unnecessary and immaterial addition to the contract, and it did no more than express in terms what the law would have implied in its absence.

3. When contract consisting of letters or telegrams showing offer and unconditional acceptance is complete, note, 6 Ann. Cas. 378. See, also, 12 Cal. Jur. 904.

4. See 6 Cal. Jur. 298.

[6] ID. — MUTUAL ABANDONMENT AND RESCISSION—ISSUES—FINDINGS. In such action, if it be conceded that the question of mutual abandonment and rescission of the contract was within the issues framed by the pleadings, it must be concluded that the trial court impliedly found against the defendant upon this issue because the findings of fact were fully responsive to all of the issues as framed by the pleadings.

[7] ID. — RESCISSION BY MUTUAL CONSENT — NEW AGREEMENT — CONDUCT.—A rescission when effected by mutual consent is a new contract, to effect which there must be a meeting of the minds, it being true, however, that the consent of the parties to such an agreement of rescission is not required to be expressed in words, but may be manifested by conduct. Such conduct, however, must afford a stronger basis for the inference of consent than mere conjecture or speculation.

[8] ID.—FAILURE OF BUYER TO MAKE PAYMENT—LETTER WRITTEN TO ESCROW HOLDER—CONSTRUCTION OF—RESCISSION.—A letter written by defendant after he had failed to make one of the payments required by the contract, notifying the escrow holder that he would be unable to make payments as required by the instructions, and instructing it not to turn over any money already deposited with it by him to the seller or his representatives and "that I am willing to *loose* the few hundred dollars I have expended improving said land, and pay the bank all expenses for drawing papers, which they make take out of the $1,000.00 deposited with them and return balance to me," did not expressly or by necessary implication constitute an offer to rescind, it amounting to no more than a notification by the defendant that he did not intend to further perform the contract.

[9] ID.—SUBSEQUENT SALE OF PREMISES TO STRANGER—RIGHT OF SELLERS.—In selling the premises covered by the contract in question to a stranger some time after such letter was delivered to the bank, the sellers did no more than they had a right to do in the absence of a rescission. The defendant having breached his contract, the plaintiffs thereafter held the land freed from any claim or right of defendant thereto or therein.

[10] ID.—ACT OF SELLING — INTENT — RESCISSION.—In the absence of any other evidence indicating an intention to rescind, the act of the plaintiffs in selling the premises is no more referable to such intent than it is to an intent to stand upon their rights under the contract which defendant had breached and retain to their own use the moneys which he had paid in part performance of his promises. That act indicated nothing more than that plaintiffs

---

7.   See 6 **Cal. Jur.** 382; 6 **R. C. L.** 921.

10.   See 6 **Cal. Jur.** 458; 6 **R. C. L.** 1024.

did not then intend to thereafter convey those premises to the defendant.

[11] ID.—RESCISSION—ABANDONMENT — FINDING — EVIDENCE.—In such action, the trial court was justified under the evidence in finding that no agreement for an abandonment and rescission of the contract was entered into between the parties.

[12] ID.—PERFORMANCE BY SELLERS — PREVIOUS DEFAULT BY BUYER— EFFECT OF.—The circumstance that the plaintiffs failed to deliver into escrow or tender to the defendant the certificate of title referred to in the escrow instructions is immaterial, in view of the fact that such certificate was not due from them until a certain time which had not arrived when the defendant breached his contract and gave the written notice of his intention not to perform.

---

(1) 13 C. J., p. 266, sec. 52.    (2) 39 Cyc., p. 1222.    (3) 27 C. J., p. 260, sec. 308; 39 Cyc., p. 1222.    (4) 21 C. J., p. 866, sec. 2. (5) 4 C. J., p. 980, sec. 2959.    (6) 4 C. J., p. 778, sec. 2728. (7) 13 C. J., p. 601, sec. 624; 39 Cyc., p. 1356 (1926 Anno.).    (8) 39 Cyc., p. 1358 (1926 Anno.).    (9) 39 Cyc., p. 1357.    (10) 39 Cyc., p. 1357.    (11) 39 Cyc., p. 1356.    (12) 39 Cyc., p. 1516.

APPEAL from a judgment of the Superior Court of Los Angeles County. Walton J. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. C. Shelton for Appellant.

Ernest M. Torchia and Charles Matthews for Respondents.

MYERS, C. J.—On September 4, 1920, the plaintiffs and defendant met at the First National Bank of Burbank and there created an escrow in the manner following: The plaintiffs signed and delivered to the bank a document entitled "Seller's Escrow Instructions," reading in part as follows: "I hereby hand you a deed executed by Giorgio Tuso and Giovannina Tuso to Glen D. Green, a single man, covering [description of premises] which you are authorized to deliver to Glen D. Green or his representatives, upon payment to you within 150 days from date hereof for account of Giorgio Tuso, the sum of twenty-nine thousand dollars ($29,000) [Here follow provisions for the procuring

---

12.    See 6 Cal. Jur. 450; 6 R. C. L. 1020.

of certificate of title and payment of encumbrances]. As a part of the consideration for said deed, you will also procure note executed by Glen D. Green in favor of Giorgio Tuso and Giovannina Tuso, his wife, for $19,000, as joint tenants with the right of survivorship, . . . " (Here follow specifications of the terms of payment of the note, instructions for affixing revenue stamps, etc., and the following provision) : "Of the $10,000 cash—$300.00 is to be paid today, $700.00 within 30 days, $9,000.00 on Jan. 1, 1921." At the same time the defendant signed and delivered to the bank a paper entitled, "Buyer's Escrow Instructions," and reading in part as follows: "Herewith I hand you $300.00 and will pay $700.00 on or before thirty days, and $9,000.00 on Jan. 1, 1921, all of which you are authorized to use in connection with my purchase of the following described property [description of premises] when you can secure for me deed certificate of title issued by the Title Insurance and Trust Co. of Los Angeles, showing the record title to said property is vested in buyer, free from encumbrances except the second half taxes for the fiscal year 1920–1921, and a mortgage executed by myself in favor of Giorgio Tuso and Giovannina Tuso, his wife, as joint tenants with right of survivorship, · for $19,000, . . . " (Here follow specifications of the terms of payment of the note, instructions for the procuring of fire insurance policy, recording of instruments, etc.) While these papers were being prepared by the escrow officer of the bank in the presence of all of the parties, the plaintiffs demanded that he insert therein a provision that if the buyer should default the payments already made should be forfeited to the seller. The defendant acquiesced in this and in turn demanded that a provision be inserted to the effect that if the seller should fail to furnish title the money paid should be returned to the buyer. The plaintiffs acquiesced in this, and thereupon the escrow officer inserted in the seller's escrow instructions the following provision: "Should buyers fail to make payments as specified herein the payments already made on the property shall be forfeited to the seller," and in the buyer's escrow instructions he inserted the following: "In case seller cannot furnish title as specified above within time mentioned in these instructions all money paid is to be returned to buyer." These facts are testified to by the

escrow officer, and for the purposes of this appeal must be accepted as true in support of the findings, even though in part contradicted by the defendant. The two escrow instructions coincided as to description of premises, purchase price, terms of payment, terms of note and mortgage, provisions for certificate of title, etc. The defendant paid to the bank the sum of $300 at the time of the signing and delivery of the papers and thereafter paid the second payment of $700 as provided in the instructions, and the plaintiffs executed and delivered into the escrow good and sufficient deeds of conveyances of the premises therein described. The defendant failed to make the payment of $9,000 on January 1, 1921, and on January 3d he delivered to the bank the following letter or notice:

"First National Bank, Burbank, California.

"Gentlemen: Owing to conditions over which I have no control, I will be unable to make payments as instructions in buyer's escrow made by me on September 4, 1920, to First National Bank of Burbank, covering the Giorgio Tuso land, as described in said escrow instructions. Therefore, I would further instruct you not to turn over any money I have already deposited with you to Giorgio Tuso or his representatives, and also instruct him that I am willing to *loose* the few hundred dollars I have expended improving said land, and pay the bank all expenses for drawing papers, which they may take out of the $1000.00 deposited with them and return balance to me. This notice delivered to said bank Jan. 3, 1921.

"Very truly yours,
"Glen D. Green."

It does not appear that the plaintiffs made any direct response to this letter or notice, but some time thereafter (how long thereafter does not appear from the record) they sold and conveyed this property to another purchaser at a price in excess of that specified in the escrow herein.

Thereafter plaintiffs brought suit against the bank to recover the $1,000 held by it, alleging the common counts for moneys had and received by it to their use, further reciting the making of the contract between plaintiffs and the present defendant, the deposit by this defendant of the $1,000 in connection therewith for the use and benefit of plaintiffs and alleging that said defendant defaulted in the payments speci-

fied in said agreement and refused to purchase the property, thereby forfeiting the said $1,000. The bank interpleaded the present defendant, paid the money into court and was discharged from the case. The defendant answered denying the allegations of the complaint, and filed a cross-complaint alleging the deposit by himself of the $1,000 in the bank for his own use and benefit "with the intention of having the same applied upon the purchase price" of the land described in the escrow, alleging that at no time was there any written agreement between the parties for the purchase of said land, and alleging that the sale and purchase thereof was neither agreed upon nor consummated; also alleging that "plaintiffs have sold the said property which they intended to sell to the said defendant to other parties and at considerably in excess of the amount for which they expected to sell the said property to said defendants." Plaintiffs answered the cross-complaint, and upon the issues so joined, after a trial, findings and judgment were for the plaintiffs. The findings respond to all of the issues made by the pleadings and the facts are found therein in considerably greater detail than in those allegations. No finding was made upon the allegation that plaintiffs have since sold the property at a higher price, which was not denied by plaintiffs. Defendant makes the following points in support of his appeal: (1) That no memorandum sufficient to charge him under the statute of frauds was signed by him; (2) that the provision for forfeiture upon default was not signed by him, but only by the plaintiffs; (3) that if a binding agreement was entered into it was mutually abandoned and rescinded by the parties, and (4) that the court erred in admitting into evidence the seller's escrow instructions which were not signed by the defendant and the testimony of the escrow officer as to what was said and done by the parties at the time of preparing and signing the instructions.

Appellant's first, second, and fourth points, upon analysis, are all found to rest upon the same premise, namely, the contention, or rather the assumption, on the part of appellant, that in determining whether or not appellant was bound by a valid contract, and if so, the terms thereof, we cannot look beyond the terms of the writing entitled "Buyer's Escrow Instructions," which was the only writing signed by him. We cannot accept this premise. [1] A contract be-

tween two parties is created by a proposal or offer by one of the parties and an acceptance thereof by the other. [2] A contract of sale may well consist of a proposal on the part of the seller embodied in a letter signed by him alone, and an acceptance thereof on the part of the buyer embodied in another letter signed by him alone. Such is the common practice in everyday affairs. [3] When the minds of the parties meet, that is to say, when the respective writings match one another as to subject matter, terms, and conditions, a contract comes into existence between the parties, and when such terms and conditions are stated in writings which are signed by the respective parties the contract is none the less a contract in writing merely because each of the respective writings is signed by but one of the parties. Such a contract in writing fully satisfies the statute of frauds. (*Frost* v. *Alward,* 176 Cal. 691 [169 Pac. 379]; *Merkeley* v. *Fisk,* 179 Cal. 748 [178 Pac. 945]; 12 Cal. Jur. 904, and cases cited.) In construing such a contract the separately executed instruments are to be considered and construed together as one contract. [4] So construing and considering the two instruments entitled escrow instructions herein, the one signed by plaintiffs and the other by defendant, we find a complete contract of sale and purchase, containing all of the necessary terms, covenants and conditions. In such situation the mutual stipulations of the parties, the actual conveyance in escrow by one and the promise by the other to pay the price, both being valid, constituted a sufficient consideration and created a valid escrow. (*Rogers etc. Co.* v. *Southern California etc. Co.,* 159 Cal. 735 [35 L. R. A. (N. S.) 543, 115 Pac. 934].) [5] The testimony of the escrow officer was admitted not for the purpose of varying the terms of the written contract between the parties, but for the purpose of proving that the defendant at the time he entered into the contract had actual knowledge that the provision for a forfeiture in case of default was one of the provisions thereof. It sole purpose and effect was to reaffirm the provisions of the written contract rather than to alter them. Conceding that it was erroneously admitted, it could not have been prejudicial. The provision for forfeiture was an unnecessary and immaterial addition to the contract. It did no more than express in terms what the law would have implied in its absence. (*Glock* v.

*Howard,* 123 Cal. 1 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713].)

We come now to appellant's remaining contention, that the contract was mutually abandoned and rescinded by the parties. It is doubtful that this question was within the issues as framed by the pleadings, and it does not appear to have been regarded as an issue at the trial below. But we do not find it necessary to determine this question. **[6]** If it be conceded that the question of abandonment and rescission was within the issues framed by the pleadings, it must be concluded that the trial court impliedly found against the defendant upon this issue because the findings of fact were fully responsive to all of the issues as framed by the pleadings. It remains, then, to consider whether the finding thus implied is supported by the evidence. The appellant's contention is that his letter or notice of January 3d constituted an offer of rescission and that the act of the plaintiffs at some time thereafter in selling and conveying the premises to a third party constituted an acceptance thereof. We are unable to agree with this contention. **[7]** A rescission when effected by mutual consent is a new contract, to effect which there must be a meeting of the minds. It is true that the consent of the parties to such an agreement of rescission is not required to be expressed in words, but may be manifested by conduct. But such conduct must afford a stronger basis for the inference of consent than mere conjecture or speculation. **[8]** The letter of January 3d was not expressly or by necessary implication an offer to rescind. By it the appellant made no offer on his part except to pay the bank for the expenses of drawing the papers. Neither expressly nor by implication did he offer to restore the plaintiffs to substantially the same position as if the contract had not been made, nor did it contain any offer, expressed or implied, to do equity, notwithstanding it appeared inferentially therefrom that the defendant had been in possession and enjoyment of the premises for some time. Neither did it contain any proposal which called upon the plaintiffs to either accept or reject the same. It amounted to no more than a notification by defendant that he did not intend to further perform the contract. If by a process of liberal construction it could be deemed an offer of rescission we find nothing in

the evidence which required the trial court to conclude that plaintiffs had accepted it as such. [9] In thereafter selling the premises to a stranger plaintiffs did no more than they had a right to do in the absence of a rescission. Defendant had breached his contract and plaintiffs thereafter held the land freed from any claim or right of defendant thereto or therein. As was pointed out in the leading case of *Glock* v. *Howard, supra,* upon a breach by the buyer of his promise to pay, the seller may adopt one of four courses of action: "1. To stand upon the terms of his contract and sue for its breach under section 3307 of the Civil Code; 2. Still resting upon the contract, he may remain inactive, yet retain to his own use the moneys paid by the vendee; so that it is of no moment whether or not the contract declares that such moneys shall upon the breach be forfeited as liquidated damages; 3. Going into equity, still upon his contract, he may seek specific performance; or finally, if his generosity prompts him so to do, he may agree with the vendee for a mutual abandonment and rescission, in which last case, and in which last case alone, the vendee in default would be entitled to a repayment of his money." [10] In the absence of any other evidence indicating an intention to rescind, the act of the plaintiffs in selling the premises is no more referable to such intent than it is to an intent to stand upon their rights under the contract which defendant had breached and retain to their own use the moneys which he had paid in part performance of his promises. That act indicated nothing more than that plaintiffs did not then intend to thereafter convey those premises to the defendant. It was no more significant than would have been an express refusal on the part of the plaintiffs to convey the premises to the defendant. As was said in the Glock case, *supra:* "But while it is essentially true that in case of a rescission the vendee may demand that he be restored to his original condition, it does not follow that a vendor who refuses to convey after such breach by the vendee thereby rescinds. To the contrary, in refusing to convey after the vendee's default he is not treating the contract as at an end, but is expressly standing upon it, and basing his rights upon its terms, covenants and conditions." The case of *Bernard* v. *Renard,* 175 Cal. 230 [3 A. L. R. 1076, 165 Pac. 694], is not in point here. Where an action is brought by the lessor to recover rent accruing under the

terms of the lease it is an action based upon the contract of lease and of necessity is predicated upon the theory that the executory provisions thereof were still in full force and effect at the time when the rent installments accrued. In such case, where it appeared that prior to such time the lessor had accepted and had assumed full and unqualified possession and control of the leased premises, such conduct being utterly irreconcilable with the theory that the lease contract was still in full force and effect, was held to estop the lessor from maintaining the action to enforce the executory provisions thereof. Having elected by his conduct to treat the contract as at an end, he was not permitted thereafter to pursue a remedy available only on the theory that it was still in effect. The present action proceeds upon the theory that the contract of sale, as to its executory provisions, is no longer in force and effect, but has been breached and that the buyer's rights thereunder have been thus terminated. If the present action were one to recover the entire balance of the unpaid purchase price it would be analogous to the Bernard case. If the Bernard case had been an action to recover rents which had accrued and become payable prior to the time when the lessor accepted and assumed possession and control of the leased premises, it would then have been analogous to the present case. [11] We are satisfied that the trial court was justified, if indeed it was not required under the evidence, to find that no agreement for an abandonment and rescission of the contract was entered into between the parties. [12] The circumstance that the plaintiffs failed to deliver into escrow or tender to the defendant the certificate of title referred to in the escrow instructions is immaterial. Such certificate was not due from them until February 1st. On January 2d defendant had breached the contract by failing to pay the $9,000 which he had promised to pay on January 1st, and on January 3d he gave written notice of his intention not to perform the contract. This relieved the plaintiffs of the duty of performing the useless act of furnishing a certificate of title which defendant had notified them he would not accept.

The judgment is affirmed.

Lawlor, J., Waste, J., Shenk, J., Richards, J., Seawell, J., and Lennon, J., concurred.