[L. A. No. 7406. In Bank.—May 4, 1925.]

## RODNEY HILDEBRAND, Appellant, v. GEORGE H. BECK, Respondent.

[1] VENDOR AND VENDEE—ESCROW—PURCHASE PRICE—TITLE TO—EMBEZZLEMENT.—Where the vendor of real property deposited his deed to the property with an escrow-holder with instructions to deliver the same to the vendee upon the payment to it for his account of the purchase price, and the vendee deposited the purchase price with the escrow-holder with authority to use it in connection with the escrow when it could secure for him a title guarantee, pending the securing of the title guarantee the money was held in trust by the escrow-holder for the vendee, and where it was embezzled during said time, it was the money of the vendee that was embezzled.

[2] ID.—DELIVERY OF DEED—TITLE.—In such a case the purchase price not being held for the account of the vendor, the escrow-holder had no authority to deliver the deed and the title to the property did not pass upon a delivery.

[3] ID.—ESCROW INSTRUCTIONS—DEPOSIT OF MONEY.—A provision in escrow instructions, that all disbursements may be made by the

---

2.   See 10 Cal. Jur. 591; 10 R. C. L. 636.

check of the escrow-holder, gave the latter the right to deposit the purchase price to its own account, but it cannot be held that the vendee loaned the money to the escrow-holder until the terms of the escrow should be fulfilled.

[4] ID. — DELIVERY OF DEED — RATIFICATION — ACTION FOR PURCHASE PRICE.—In such a case the commencement of suit by the vendor against the escrow-holder for the purchase price of the property did not constitute a ratification of the delivery of the deed to the vendee, where it was admitted that the vendor had no knowledge that the money deposited by the vendee had been embezzled at the time the title guarantee was secured.

[5] ID. — AGENCY—UNAUTHORIZED ACT—RATIFICATION—KNOWLEDGE.— A principal is not bound by ratification of an unauthorized act of his agent unless he had previous knowledge of all the material facts.

---

(1) 21 C. J., p. 882, n. 91.   (2) 21 C. J., p. 883, n. 3.   (3) 21 C. J., p. 882, n. 91.   (4) 21 C. J., p. 884, n. 4.   (5) 2 C. J., p. 476, n. 18.

APPEAL from a judgment of the Superior Court of Los Angeles County. Albert Lee Stephens, Judge. Affirmed.

The facts are stated in the opinion of the court.

Kemp & Clewett and H. S. Clewett for Appellant.

Hocker & Austin and Robert E. Austin for Respondent.

LENNON, J.—In this action of ejectment the undisputed facts of the case as disclosed by the pleadings and proof are these: The defendant and respondent, hereinafter referred to as the vendor, was the owner of certain property in the city of Los Angeles which he listed with the Eshleman Realty Company for sale. The plaintiff and appellant, hereinafter referred to as the vendee, agreed to purchase the property for the sum of $1,800. The vendee was also to assume certain encumbrances. The vendee paid to the Eshleman Realty Company $100 deposit on the purchase price and subsequently on January 31, 1921, filed escrow instructions with said Eshleman Realty Company relative to the re-

---

5.   See 1 Cal. Jur. 777; 21 R. C. L. 928.

mainder of the purchase price. The material parts of the escrow instructions of said vendee are as follows:

"Escrow No. 4164.

"Los Angeles, Jan. 31st, 1921.

"H. B. Eshleman Realty Co.

  "Escrow Dept.

  "I have handed the H. B. Eshleman Realty Co. $100 (sales deposit receipt) and hand you herewith my check for the further sum of $500.00 and will hand you the further sum of $1200.00 within ten days from date hereof all of which you are authorized to use in connection with your Escrow No. 4164 when you can secure for me a title Guarantee on the property and premises situate at No. 1118 Orange Drive in the City of Los Angeles, according to the legal description thereof which will show that the record title to said property is vested in Rodney Hildebrand, a married man, as his sole and separate property free from incumbrances. . . . If you are unable to comply with the instructions within 30 days from this date said money and instruments shall thereafter be returned to me on my written demand, and in the absence of such demand you will proceed to comply with these instructions as soon as possible thereafter. . . . All disbursements may be made by check of H. B. Eshleman Realty Company."

On February 1, 1921, the vendor signed and deposited with the Eshleman Realty Company escrow instructions which were in part as follows:

"Escrow No. 4164.

"Los Angeles, Feb. 1, 1921.

"H. B. Eshleman Realty Co.

  "Escrow Dept.

  "I will hand you a deed Executed by myself, George H. Beck, a widower, to Rodney Hildebrand, . . . which you are authorized to deliver to the said Rodney Hildebrand or his representatives upon payment to you within 30 days hereof for account of myself the sum of Eighteen Hundred . . . Dollars (payable by check of the H. B. Eshleman Realty Co.) from which you may deduct your escrow charges, $7.50 . . . and from which you may deduct the sale commission of the H. B. Eshleman Realty Co. of $250.00."

Thereafter each of the parties complied with the requirements of the escrow on his part to be performed; the money being paid by the vendee, February 1, 1921, and deposited to the account of the H. B. Eshleman Realty Company, February 3, 1921, as shown by the bank's indorsement on the checks, the deed being delivered to the escrow-holder by the vendor on February 12, 1921. On February 26, 1921, the deed was recorded and a certificate of title was thereupon issued by a title insurance company showing title was vested in the vendee. The purchase price, however, was never paid to the vendor of the property. The evidence shows, and it is not disputed, that the money was not paid for the reason that H. B. Eshleman, sole owner of the Eshleman Realty Company, who carried on the business under the name of Eshleman Realty Company, absconded some time between February 28 and March 2, 1921, leaving a deficiency of over $40,000 in the escrow account of the Eshleman Company. An examination of the business affairs of the Eshleman Realty Company disclosed the fact that there was on hand on February 26, 1921, but $1,656.20 with which to meet all of the outstanding obligations of the company. An analysis of the bank statement of the company for the month of February disclosed that on February 5, 1921, the bank account of the company was overdrawn to the extent of $41.10. Thereafter various sums of money had been deposited to the credit of the account and various other sums withdrawn therefrom. The evidence also shows the deficiency of $40,000 in the escrow account of the Eshleman Realty Company as distinguished from its bank account on February 23, 1921.

Demand was made by the vendee upon the vendor for the possession of the property in controversy and upon the refusal of the vendor to give up possession this suit was commenced by the vendee to quiet title to the property and to obtain possession thereof. The judgment of the trial court was for the vendor. The findings of the trial court upon which the judgment was predicated, relative to the deposit of the money by the vendee, and the failure of the Eshleman Company to apply such deposit to the purchase of the property in controversy, are to the effect that the vendee placed in the custody of the H. B. Eshleman Realty Com-

pany, as escrow agent, the sum of $1,800 and directed said company to use said money in said escrow when said company could procure a title guarantee covering the title to the property, showing said title vested in the vendee; that said money was received by the said company for the account of the vendee herein; that immediately thereafter the money so deposited by vendee was embezzled and has never been returned either to the said company or to either of the parties thereto; that at the time of the delivery of the deed said company did not have on hand and had not received for the account of the vendor the sum of $1,800, or any other sum at all and the delivery of said deed was unauthorized and void and conveyed no right, title or interest in and to the aforesaid property to plaintiff.

It is the contention of the vendee that inasmuch as the vendor was entitled to receive from the Eshleman Realty Company, upon the completion of the escrow but $1,537, less the cost of the title guarantee, and that there was in the bank balance of the Eshleman Realty Company on February 26, 1921, the day on which the deed to the property was recorded and the certificate of title issued by the title company, $1,656.20, the conditions of the escrow had been fulfilled and that, therefore, the title to the property had passed from the vendor to the vendee.

With this contention we cannot agree.

[1] According to the escrow instructions of the vendor the deed to the property was to be delivered to the vendee by the escrow company "upon the payment to you . . . for account of myself, the sum of $1800." According to the escrow instructions of the vendee the money deposited by him with the Eshleman Company was authorized to be used in connection with escrow No. 4164 (the escrow in controversy) "when you can secure for me a title guarantee." It is at once apparent that the money deposited by the vendee with the escrow company was not deposited with the company *for the account of the vendor* at the time the deposit was made, but that it was to be so applied when the Eshleman Realty Company could secure for the vendee "a title guarantee." Pending the procurement of the title guarantee the Eshleman Realty Company held the money in trust for the vendee and the vendor had no claim to it. In other words,

196 Cal.—**10**

the Eshleman Realty Company never had any money paid to it for the account of the vendor until the very instant that the company procured for the vendee "a title guarantee." If, in the interim between the deposit of the money with the company and the securing of the "title guarantee" by the company, the money was embezzled, then it was the money of the vendee that was embezzled and the Eshleman Realty Company would have no authority to deliver to the vendee the title guarantee for the reason that at the instant of time when the title guarantee had been secured no .money had been paid to the company *for the account of the vendor.*

[2] As before indicated, the finding of the trial court was that the money deposited by the vendee was embezzled shortly after its deposit. If this finding is supported by the evidence it follows that the money embezzled was the money of the vendee and that as a result the Eshleman Realty Company, when delivering the deed and title guarantee to the vendee, was acting without its authority. The finding of the trial court that the property was embezzled shortly after its deposit and prior to the securing by the Eshleman Realty Company of the title guarantee is supported by the admitted fact that on February 5, 1921, the bank balance of the company was overdrawn and the further admitted facts that some time between February 28 and March 2, 1921, the sole owner of the company absconded.

[3] One of the provisions of the escrow instructions of the vendee, as previously indicated, is to the effect that if the Eshleman Realty Company was unable to comply with the instructions of the escrow within thirty days said money should be returned to the vendee upon his written demand. "All disbursements may be made by check of H. B. Eshleman Realty Co." This last provision gave the right to the Eshleman Realty Company to deposit the money to its own account. It cannot be said, however, that by that provision the vendee loaned the company the use of his money until the terms of the escrow should be fulfilled. The vendee had no intention by such provision of creating between himself and the escrow company the relation of creditor and debtor. Such provision did no more than authorize the Eshleman Realty Company to deposit the money to its own account and to return the money to the vendee if the terms

of the escrow were not fulfilled by a check on such bank account. If the relation of creditor and debtor was not intended to be created by the vendee it follows that the escrow company was under an obligation to keep within its bank account sufficient money to cover this deposit. It was not necessary by reason of this provision that the company should keep the amount deposited in a separate account, but it was necessary that at all times it should keep in its bank account sufficient money to cover this deposit. It follows that when on February 5, 1921, the account was overdrawn so that there did not remain in the bank balance of the escrow company sufficient money to cover this deposit, the money of the vendee was at that time embezzled. It is of no importance in determining the date of the embezzlement that the embezzler may have, at the time he embezzled the money, intended to return it. (*People* v. *Jackson,* 138 Cal. 462 [71 Pac. 566].)

The money of the vendee having been embezzled on February 5, 1921, there was no money of the vendee's in the hands of the company on February 26, 1921, when the certificate of title was issued by the title insurance company, to be applied to the account of the vendor. This being so, no title passed to the vendee and the vendor is entitled to retain possession of the property.

[4] The fact that, shortly after the discovery that H. B. Eshleman had absconded, the vendor commenced suit against the company for the purchase price of the property does not militate against the conclusion heretofore reached that the title had not passed, upon the theory that by the institution of such suit the vendor ratified the delivery of the deed to the vendee. It is admitted by the stipulations of the parties that at the time of the institution of the suit the vendor had no knowledge of the fact that Eshleman had become short in his accounts or that he did not have money enough on hand to cover all escrow agreements. In other words, he was not aware of the fact that on the date of the securing of the title guarantee for the vendee the money of the vendee on deposit with the escrow company had already been embezzled. [5] A principal is not bound by a ratification of an unauthorized act of his agent unless he had previous knowledge of all the material facts. (Sec.

2310, Civ. Code; *Brown* v. *Rouse,* 104 Cal. 672 [38 Pac. 507].)

The judgment is affirmed.

Seawell, J., Shenk, J., Myers, C. J., Richards, J., Waste, J., and Lawlor, J., concurred.