[Civ. No. 15706. Second Dist., Div. Two. May 12, 1947.]

PAUL HASTINGS et al., Respondents, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association) et al., Defendants; THOMAS O. REYNOLDS et al., Appellants.

Ratzer & Bridge for Respondents.

L. B. Reynolds for Appellants.

MOORE, J.—On June 22, 1944, respondents were owners of lots 12 and 13 of the Hallowell tract in Los Angeles County. On that day appellants agreed to deposit in an escrow with defendant bank the sum of $3,500 to be paid to respondents whenever the bank should have filed for recordation a sufficient conveyance such as would entitle the bank to procure an owner's policy of title insurance issued by the Title Insurance and Trust Company or National Title Insurance Company showing title of the two lots vested in appellants

subject to certain specified exceptions. At the same time appellants deposited $500 of the purchase price and directed the bank that if it should be "unable to comply with these instructions on or prior to July 22, 1944, you will comply as soon thereafter as possible unless a written demand for return of money or instruments by a party to this escrow is received by you subsequent to such date." On or about the same day respondents approved by writing of appellants' instructions and agreed to deposit such instruments in the escrow as would enable the bank to comply with the instructions. Also, they authorized the bank to use such instruments when it should hold for the account of respondents the sum of $3,500.

The legal effect of the instructions was an obligation upon appellants to pay into the escrow the balance of the purchase price on or prior to July 22, 1944, but that if they should be unable to comply by that date they should "comply as soon thereafter as possible unless a written demand for return of money or instruments by party to this escrow is received by you subsequent to such date and prior to the recording of any instrument provided for herein." No demand was thereafter made upon appellants to comply with the escrow by depositing the balance of the money, but without notice to appellants and without their knowledge on August 21, 1944, respondents conveyed the property to a stranger to the escrow and eleven days later demanded payment of the deposit to themselves. Respondents filed this action to quiet their title to the $500, less the $20 service charge alleging that appellants' claims thereto are without right.

In their cross-complaint appellants alleged in addition to the facts above recited that "said deed was never recorded and said owner's policy of title insurance was never obtained; that said . . . bank . . . could not obtain said owner's policy of title insurance because of the fact that said plaintiffs . . . did . . . convey said real property to a third party which deed was recorded on August 31, 1944, in the office of the county recorder." In response to such pleading respondents alleged that the bank was instructed by appellants to record the deed and obtain the policy of title insurance "on or before July 22, 1944," but that on the latter date appellants declared their inability to consummate the purchase and refused to deposit the balance of the purchase price. The bank having deposited the $480 with the clerk of the court was dismissed from further liability.

Although respondents extended the term of the escrow for another 30 days, no written demand was ever made by them for the return of the deed or for a termination of the escrow. But while appellants were still endeavoring to raise the $3,000 respondents opened an escrow at another bank, completed their sale and the deed to the new purchaser was recorded.

The court found (1) that "appellants have been continuously since July 22, 1944, and still are in default upon their agreement to purchase the . . . property from plaintiffs and that plaintiffs were at all times . . . able, willing, and ready to transfer and convey said real property to defendants Reynolds free and clear of all incumbrances except as provided in said agreement"; (2) that the $480 is the property of respondents and (3) that appellants have no right, title or interest in that sum. Judgment was entered accordingly.

■ The $500 was not to be paid to respondents until after delivery of the deed and a policy of title insurance had issued. The payment of that deposit and the delivery of the deed were mutually dependent upon each other. The title to the money remained in appellants, and after July 22, 1944, they were entitled to withdraw it even though they were liable in damages for failure to complete the transaction as provided by the terms of the escrow. (*Widess* v. *Title Insurance & Trust Co.*, 112 Cal.App. 343 [296 P. 899].) The title to money deposited in escrow to be paid to the vendor of property does not pass until all conditions of the escrow have been fulfilled. (*Hildebrand* v. *Beck*, 196 Cal. 141, 146 [236 P. 301, 39 A.L.R. 1076] ; 39 A.L.R. n. 1080 ; 19 Am.Jur. 426, § 11.) The language of the instructions clearly implies that appellants should be notified of respondents' desire to close the escrow. After July 22, the purchasers could not be divested of their rights to complete the transaction without notice specifying a day as the expiration date of the term of indulgence. It is a cardinal principle of extensive application that he who seeks equity must do equity. (30 C.J.S. p. 458.)

The rule with reference to the treatment of money placed in an escrow does not differ from the rule governing the delivery of written instruments deposited in the same escrow. If the deed held by the escrow agent for appellants did not pass to them merely because it was where it was, neither did title to the money pass to respondents merely because it was in the escrow. Holding the deed as agent for respondents,

the bank was not obliged to deliver it to appellants until all specified conditions had been performed. Likewise it held the money until title of the lots was vested in appellants. There was not only no agreement that the bank should pay the money to respondents except in event such title should pass to appellants, but there was no provision in the escrow instructions that respondents should be entitled to the $500 either as a forfeiture or as liquidated damages. Of course a forfeiture could not have been declared either by the bank or by the court, since forfeitures are abhorred. Neither are respondents entitled to the money as liquidated damages in the absence of an allegation of damages and of an agreement that such sum should be the amount of respondents' damages in the event appellants should fail to deposit the balance of the purchase price prior to respondents' abandonment of the escrow.

Respondents have proceeded upon the hypothesis that they had an agreement for themselves to receive the $500, sale or no sale, as though they had a contract of purchase and sale with a covenant that appellants' initial deposit should be "retained not as a penalty but as liquidated damages because it is extremely difficult to determine the amount of such damage." Language similar to the last quoted clause was a part of the agreement involved in *Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199], cited by respondents, and time was there made "of the essence of the contract." No action was taken by respondents herein to place appellants in default, and there was no offer by respondents to make conveyance after August 21, 1944, to which date they had extended the term of the escrow, if appellants would pay the balance by a specified date. Having allowed the buyers until the latter date to comply with respondents' instructions which directed the bank to "comply as soon thereafter as possible unless a written demand for return of money or instruments by a party to this escrow is received by you subsequent to such date and prior to the recording of any instrument provided for herein," respondents could not even under a formal contract lay claim to the $500 without first having put appellants in default. (See *Glock* v. *Howard & Wilson Colony Co., supra.*)

The fact that the term of the escrow was extended to August 21, as an accommodation to appellants does not alter the applicability of the foregoing principles. Within that

period appellants were attempting to raise the $3,000 as they had attempted to do during the term designated in the instructions. Since the money was never deposited the escrow was never completed and title to the money did not pass from appellants.

■ The contention that respondents are entitled to recover the $500 deposited since it was to apply on the purchase price of land and respondents had escrowed all necessary instruments to effect a complete transfer of their title is not legally sound. *Wilson* v. *Coffey,* 92 Cal.App. 343, 349 [268 P. 408] and *Tuso* v. *Green,* 194 Cal. 574, 581 [229 P. 327], do not support their thesis. In the Wilson case all acts had been done by both buyer and seller as provided by their escrow instructions. The defendant there attempted to avoid the consummation of the transaction by reason of the existence of an incumbrance which had been by him waived. The court there followed *Tuso* v. *Green,* 194 Cal. 574 [229 P. 327], wherein it was held that both parties having performed all of their covenants and a clear title except for the reservations specified in the escrow instructions having been prepared for conveyance to the buyer, the seller was entitled to keep the amount deposited by the purchaser in the escrow. In the case at bar a wholly different situation obtained. Without advising appellants of their intention not to stand upon the terms of the escrow respondents repudiated the agreement and sold their lots to another party.

The judgment is reversed with instructions to enter judgment for appellants.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied May 29, 1947, and respondents' petition for a hearing by the Supreme Court was denied July 10, 1947. Edmonds, J., and Schauer, J., voted for a hearing.