[Civ. No. 21879.   Second Dist., Div. Three.   Feb. 1, 1957.]

ALBERT E. KELLY et al., Respondents, v. ROBERT B. STEINBERG et al., Defendants; SAM GORDON, Appellant.

Daniel G. Marshall for Appellant.

Jack B. Tenney and Cecil W. Collins for Respondents.

VALLÉE, J.—Appeal by defendant Gordon from a judgment for plaintiffs in an action for money alleged to have been converted by Gordon.

The court found: 1. On October 5, 1953 plaintiffs entered into negotiations with the Filipellis and Villellas for the purchase from them of a parcel of realty and delivered to them $100 as a deposit. 2. On October 8, 1953 plaintiff Helen Kelly and the Filipellis and Villellas met at the office of defendant Steinberg who commenced preparations of a document titled ''Agreement to Purchase Real Property.'' Steinberg told Helen Kelly the document would be completed later that day and requested her to return with plaintiff Albert Kelly to execute it. Helen Kelly at that time deposited with Steinberg a check for $2,500 to apply on the purchase price. 3. Later that day plaintiffs went to Steinberg's office and at his request signed the agreement to purchase. Steinberg told them the Filipellis and Villellas would sign the document later, but they never did. 4. On the same day Steinberg delivered the check for $2,500 to Gordon. 5. On October 8, 1953, an escrow was opened for the purchase and sale of the realty with Gordon as escrow holder. The check for $2,500 was delivered to Gordon as escrow holder to be applied by him to the purchase price of the realty in the course of the escrow. 6. On October 9, 1953, Gordon endorsed and cashed the check for $2,500. 7. On October 10 Gordon called on plaintiffs and told them the instrument they had signed was erroneous and that he had prepared a new agreement which he presented to them. They signed the new agreement and delivered it to him. 8. On October 29, 1953 plaintiffs delivered to Gordon a check for $1,280.76 to be applied to the purchase price of the realty in the course of the escrow and a letter from plaintiffs' attorney, MacManigal. Gordon acknowledged receipt of the check

and a copy of the letter. 9. Gordon permitted Steinberg to take possession of the check for $1,280.76, to endorse Gordon's name thereon, and to cash it. 10. Gordon failed and neglected to place the funds or any of them in escrow. 11. The escrow was never completed. The Filipellis and Villellas were unable to deliver title to the property as provided in the agreement. They and plaintiffs mutually rescinded the agreement. 12. On October 8, 1953, Gordon unlawfully took, converted, and disposed of the $2,500 to his own use. On October 29, 1953, he unlawfully took, converted, and disposed of the $1,280.76 to his own use. 13. Thereafter plaintiffs demanded payment of $3,780.76 from Gordon, which was refused. 14. Before the filing of this action Steinberg gave Gordon more than $2,000 as restitution to plaintiffs; Gordon added enough to make $3,877, which sum in the form of two money orders Gordon deposited with plaintiffs' attorney pending the outcome of litigation. 15. Gordon and Steinberg are each indebted to plaintiffs in the sum of $3,780.76.

Steinberg defaulted. Judgment was for plaintiffs against Gordon and Steinberg for $3,780.76. Gordon appeals.

The first assignment of error is that the evidence is insufficient to support the findings. The argument is that Gordon was neither bailee nor trustee of the funds. It is also argued that title, at the times the funds were appropriated, was not in plaintiffs.

On October 5, 1953, plaintiffs delivered $100 to the Filipellis and Villellas as a deposit for the purchase of the realty and agreed to enter into a 30-day escrow. On October 8 James Villella took plaintiff Helen Kelly to La Cienega Escrow Company in Los Angeles. Helen Kelly was introduced to defendant Steinberg, who told her and Villella he would take a memorandum of the facts of the agreement and turn it over to Gordon who, as attorney, would handle the escrow. Mrs. Kelly gave Steinberg a check for $2,500 payable to cash. Steinberg asked Gordon if he was interested in holding the Kelly escrow. Gordon said he was and Steinberg gave him the preliminary notes he had made and the $2,500 check.

On October 10 Gordon appeared at plaintiffs' home and presented to them an agreement to purchase the realty which had already been signed by the Filipellis and Villellas. Gordon told plaintiffs he was in charge of the escrow and that Steinberg had turned the $2,500 check over to him with a memorandum of the escrow.

A week or ten days later plaintiffs demanded of Gordon

that he return the $2,500. Gordon told them they had signed papers to put all the money in escrow and it was up to them to keep their agreement; that they had agreed to put the further sum of $1,280.76 in the escrow, and they had better have it in or they would forfeit the $2,500.

On October 29 plaintiff Albert Kelly, accompanied by his attorney, MacManigal, went to Gordon's office. Kelly handed Gordon a check for $1,280.76 payable to Gordon. Simultaneously MacManigal handed Gordon a letter addressed to him reading in part:

"In accordance with the provisions of the above identified agreement, we hand you, as escrow holder, a cashier's check of the Security First National Bank of Los Angeles, 47th & Broadway Branch, Los Angeles, dated October 29, 1953, in the amount of $1280.76."

The letter further stated that Gordon held $3,780.76 "as escrow holder." Gordon wrote the following on the letter:

"Received copy of this letter 10-29-53 with check for $1280[76]

"Sam Gordon"

MacManigal testified: "We discussed whether—the title to the property with respect to the mineral rights, and Mr. Gordon told me that although he didn't have the title report to this property at the time, that according to a prior title report, a prior seller had reserved a half interest in the oil and mineral rights with respect to the property. He did not want to take the check for $1,280.76. He said, 'There is no use of giving me this money. I am going to try to get the consent of my clients, the Filipellis and the Villellas to return the money to the Kellys and call the deal off because their title to the property is such that they cannot convey a good and merchantable title,' and I told him that I insisted that he take the money as escrow holder because the agreement that had been entered into between the parties provided that we were to pay into escrow the sum of $1,280.76 by that date, which was on the 29th of October, 1953. I told him that as I understood it, as escrow holder he had no choice but to accept the check. Mr. Steinberg at that time stated the same thing, that as escrow holder that Mr. Gordon had no right to give law or give—to advise either party, but he was to be neutral. He was not to pay—not advise either the Kellys or the Villellas and the Filipellis but to act strictly as an escrow holder in connection with the transaction. Q. And did this occur before or after Mr. Gordon had signed that letter which you pre-

sented to him? A. It occurred just immediately prior to the time that Mr. Gordon signed the letter. Q. Then I take it he signed the letter and took the $1,280, is that correct? A. That is right. Q. Now, then, have you had any conversation with Mr. Gordon after the 29th of October? A. Yes. I had many conversations with Mr. Gordon after that time. Q. Did you ever make demand upon him for the return of the some $3,800? A. Yes. I made many oral demands and I made a written demand on Mr. Gordon. . . . One occasion I asked Mr. Gordon where the money was and he told me that it was in a trust account with the Citizens National Bank in Westwood, California. I asked him when he was going to return the money and terminate the escrow. He told me—I said he had agreed that his clients couldn't give a good title to the property and therefore he should return it and he said that he would do that just as soon as he got the consent of the Villellas and the Filipellis." Prior to October 29 MacManigal had several conversations with Gordon with respect to the escrow. In the first one MacManigal asked him if he was acting as escrow holder with respect to the purchase of the realty. Gordon said he was.

Plaintiffs, the Filipellis, and the Villellas mutually cancelled the agreement to purchase. Plaintiff Helen Kelly so informed Gordon. Gordon did not return any part of the $3,780.76 to plaintiffs.

Steinberg was a public accountant. Gordon, 31 years of age, is a member of the Bar, admitted in 1952. He was an employee of Steinberg. With the $2,500 check Gordon obtained two cashier's checks payable to himself, endorsed them and delivered them to Steinberg. When he received the $1,280.76 check Gordon put it in an envelope, sealed it with scotch tape, and put the envelope in his desk. Gordon testified he did not "exactly remember whether that [the $1,280.76 check] was taken out of my desk or whether it was left by me with Mr. Steinberg for safe keeping." The $1,280.76 check was deposited in Steinberg's bank account. The endorsement on the check was not that of Gordon. Gordon knew Steinberg did not have a license to operate an escrow agency and that if he so operated he would violate the law. About January 1954 Gordon advised plaintiffs he did not have the money in his possession and could not return it.

It seems obvious the evidence is sufficient to support the finding that the Filipellis and Villellas as sellers and plaintiffs as buyers entered into an escrow with respect to the sale

and purchase of the property and that Gordon was the escrow holder. " 'Escrow' means any transaction wherein one person, for the purpose of effecting the sale . . . of real or personal property to another person, delivers any written instrument, money, evidence of title to real or personal property, or other thing of value to a third person to be held by such third person until the happening of a specified event or the performance of a prescribed condition, when it is then to be delivered by such third person to a . . . grantor. . . ." (Fin. Code, § 17003.) ■ There is no requirement that an escrow agreement, as such, be in writing. (*Cannon* v. *Handley,* 72 Cal. 133, 144 [13 P. 315]; 18 Cal.Jur.2d 315, § 9.)

■ Where a party's money is deposited in escrow and is disposed of without compliance with the escrow instructions, he is entitled to recover from the escrow holder such damages as he may have suffered. (*Jones* v. *Title Guar. & Trust Co.,* 178 Cal. 375, 380 [173 P. 586]; *Trask* v. *Garza,* 51 Cal.App. 739, 743 [197 P. 807]; *French* v. *Orange County Inv. Corp.,* 125 Cal.App. 587, 592 [13 P.2d 1046]; *Gallagher* v. *California Pac. T. & T. Co.,* 13 Cal.App.2d 482, 488-489 [57 P.2d 195]; *Anderson* v. *Southern Title & Trust Co.,* 81 Cal.App.2d 700, 702 [184 P.2d 949]; *Montgomery* v. *Bank of America,* 85 Cal.App.2d 559, 564 [193 P.2d 475]; *Lenchner* v. *Chase,* 98 Cal.App.2d 794, 804 [220 P.2d 921]; *Karras* v. *Title Ins. & Guar. Co.,* 118 Cal.App.2d 659, 665-666 [258 P.2d 866].)

■ *Rianda* v. *San Benito Title Guar. Co.,* 35 Cal.2d 170 [217 P.2d 25], says (p. 173):

"Defendant's duty to plaintiffs is to be determined by the application of ordinary principles of agency, whether defendant be considered as escrow holder with duties to both Rianda and Daskarolis or as agent of plaintiffs alone. It is the duty of an agent to obey the instructions of his principal and exercise in his employment reasonable skill and ordinary diligence, and, if defendant violated instructions or acted negligently in retaining the check in its files, it would ordinarily be liable for any loss occasioned by its breach of duty. (See *Jones* v. *Title Guaranty etc. Co.,* 178 Cal. 375, 380 [173 P. 586]; Rest., Agency, §§ 385, 379; 1 Mechem on Agency (1914), §§ 1245, 1274-1287, 1309; 19 Am.Jur. § 465; 30 C.J.S. § 8, pp. 1205-1206.)"

The contention that title to the money was not in plaintiffs, the buyers, at the time it was appropriated is untenable. ■ Where a buyer deposits money in escrow to be paid to the seller on close of the escrow, the escrow holder is the

buyer's agent as to such money pending close of the escrow; and the buyer retains title to the money until the condition has been performed. (*Kellogg* v. *Curry*, 101 Cal.App.2d 856, 859 [226 P.2d 381].) ■ Where money is deposited with an escrow holder by a buyer, to be delivered to a seller when the seller has performed specified conditions, it is returnable to the buyer if the seller does not comply with the conditions. (*Widess* v. *Title Ins. etc. Co.*, 112 Cal.App. 343, 347-348 [296 P. 899].) ■ It is the duty of an escrow holder to protect the buyer by withholding from the seller until consummation of the determining event money placed in the escrow by the buyer and by returning it to him on failure of the prescribed event. (See *Estate of Cornelius*, 151 Cal. 550 [91 P. 329]; *Greenzweight* v. *Title Guar. & Trust Co.*, 1 Cal.2d 577, 581 [36 P.2d 186].) He must keep the buyer's money in his possession until there is either a consummation or a failure of the prescribed event. (18 Cal.Jur.2d 321, § 12.) In our case the conditions to be performed by the sellers were not performed. The deal was mutually rescinded. Title to the money did not pass to the sellers but remained in plaintiffs. It was plaintiffs' money that was appropriated. (*Hildebrand* v. *Beck*, 196 Cal. 141, 146 [236 P. 301, 39 A.L.R. 1076].)

It is asserted the findings are contradictory and, if reconcilable, the evidence supports only findings exculpating Gordon. ■ Findings will be liberally construed in order to make them complete and internally consistent, thus avoiding a reversal on purely technical grounds. (*Daniels* v. *Daniels*, 143 Cal.App.2d 430, 439 [300 P.2d 335]; *Arsenian* v. *Meketarian*, 138 Cal.App.2d 627, 632-633 [292 P.2d 293].) No purpose would be served by detailed analysis of the findings. Suffice it to say they are supported by the evidence and they, in turn, support the judgment.

Over Gordon's objections the court received evidence that sometime in February 1954 Steinberg gave Gordon about $2,090 and told him it was by way of restitution for the account of plaintiffs; that Gordon added $1,690.76 thereto, obtained two money orders totaling $3,780.76, and deposited them with plaintiffs' then attorney "to settle this case." Gordon asserts error. He says the evidence showed an offer to compromise which is not admissible. ■ It is the general rule that a mere offer of compromise is not admissible in evidence. (*Harris* v. *Miller*, 196 Cal. 8, 18 [235 P. 981].) "An offer of compromise is not an admission that anything

is due." (Code Civ. Proc., § 2078.) ▮ The statement of a party against whom a claim is made that he is willing to settle the claim, when not connected with an offer of compromise, may be proved as an admission against interest.

▮ The rule which excludes offers of compromise does not apply to statements which are in nowise connected with any attempt to compromise. (*Smith* v. *Whittier,* 95 Cal. 279, 297 [30 P. 529].) *Story* v. *Nidiffer,* 146 Cal. 549 [80 P. 692], held that an offer of the defendant to pay a certain sum for a trespass was admissible for the purpose of showing an admission that his cattle had done the damage.

The amount deposited by Gordon was the exact sum received by him from plaintiffs. ▮ Tender of the exact sum appropriated was not an offer of compromise. A compromise is a settlement of differences by mutual concessions; an adjustment of conflicting claims. (Webster's Inter. Dict., 2d ed.) There were no negotiations for a settlement. There was no discussion of a compromise. The evidence did not relate to an offer of any terms of compromise or to any dealing with plaintiffs' attorney on the subject of compromise. The court did not err in admitting the evidence.

We find no error in the record.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied March 1, 1957, and appellant's petition for a hearing by the Supreme Court was denied March 27, 1957.