John C. **KENNEDY**, Appellant,

v.

**DIST.RICT-REALTY TITLE INSURANCE CORPORATION**, Appellee.

No. 6856.

District of Columbia Court of Appeals.

Argued March 1, 1973.

Decided June 21, 1973.

———◆———

Edmund H. Feldman, Washington, D. C., for appellant.

Thomas Penfield Jackson, Washington, D. C., for appellee.

Before REILLY, Chief Judge, and KELLY and HARRIS, Associate Judges.

KELLY, Associate Judge.

In October of 1967, appellant responded to a newspaper advertisement offering to "pay up to 2% per mo. for secured investment (min. $10,000)". He telephoned John H. Haas, President of Workshop 221, Inc. After several conversations with Haas he agreed to lend Workshop 221 $10,000 in the belief that he would receive a first trust on certain property.

Appellant asked Haas which title company he preferred to use for settlement. Haas stated District-Realty Title Insurance Corporation, it appearing that he previously had dealings with one of its then-employees, Reginald S. Turner. Toward the end of October appellant visited the offices of District-Realty to speak with Mr. Turner but Turner was too busy to see him. He telephoned Turner the next day to ascertain whether District-Realty would be handling the transaction and instructed Turner that he wanted the deed of trust to provide for a right to change trustees, a penalty for late payment, and "a couple of other details". According to appellant, Turner informed him "I have handled a lot of first trusts for Workshop 221 similar to this." [1] There was no other discussion of the priority of the lien appellant would receive or the purchase of title insurance.[2]

Haas informed Kennedy that a meeting would be held with Turner on November 13 to consummate the loan transaction. Kennedy assumed that this was to be a "settlement" and that it would be held at the offices of the title company like other

1. Tr. at 22.

2. There was also a second telephone conversation between Kennedy and Turner. When asked at trial if he had given Turner any other instructions, Kennedy replied:

> No, I mentioned it was a ten thousand dollar loan and the address and I didn't go into much because we were dealing with District Realty and felt I was dealing with a reputable organization. [Tr. at 17.]

settlements he had attended. On the morning of the 13th Kennedy called Turner to advise him he would be a little late for settlement, but Turner was not in. Kennedy then called Haas who told him settlement would be at the offices of Workshop 221, Inc. instead. Kennedy arrived with a cashier's check for $10,000 payable to his order. Turner prepared a deed of trust and promissory note and told Kennedy to endorse the check so that it was payable directly to Workshop 221, Inc. Kennedy gave the check to Turner and arranged with Turner for the procurement of title insurance on the deed of trust for which Kennedy agreed to pay one-third of the premium and Haas agreed to pay the remainder.

The title insurance policy issued on December 1. It was the first report on the state of title to the property appellant had received and it disclosed that rather than a first trust as anticipated, he had a third trust, subordinate to prior liens of $12,300 and $1,535.38. No principal payments were thereafter made on the note although $450 in interest was paid; consequently, Kennedy brought suit in Superior Court against Haas, Workshop 221, Inc., Turner, and District-Realty.

Default judgments on ex parte proof were entered against Haas, Workshop 221, Inc., and Turner in his individual capacity. The cause against District-Realty was tried, nonjury, before the late Judge Justin L. Edgerton on June 23, 1970. Kennedy alleged that under the rules of agency the title company was liable on the contract created by its agent, Turner, whereby the title company purportedly agreed to settle Kennedy's loan and to hold the check in escrow, to be disbursed on the condition that the loan would be secured by a first deed of trust.

At the close of plaintiff's case District-Realty moved to dismiss on the grounds that the evidence failed to establish prima facie an agreement, express or implied, whereby Turner undertook to act as escrow agent in the transaction or, alternatively, to disburse the money only on the condition that Kennedy receive a first trust as security for his loan. The motion was taken under advisement but prior to decision the trial judge died. Thereafter the motion was submitted upon the record to another judge who, on July 29, 1972, granted the dismissal, finding that there was no evidence of any agreement between Kennedy and District-Realty, nor of any discussion between Kennedy and Turner about Kennedy's securing a first deed of trust on the property.

On this appeal appellant argues that the trial court erred "in finding that no evidence had been produced to show that plaintiff and Mr. Turner ever discussed whether plaintiff was to receive a first deed of trust on the property involved." [Brief for Appellant at 5.]

Throughout the proceedings appellee has stipulated that Turner was acting within the scope of his employment and had apparent authority to bind the title company to an agreement such as the one described by appellant. It has maintained, however, that the evidence was insufficient to establish that District-Realty, through Turner, made any agreement to act as an escrow agent or to disburse the $10,000 to Workshop 221 only upon the security of a first deed of trust on the property. We agree and affirm.

■ Although an escrow agreement need not be in writing,[3] a valid escrow agreement requires that the proposed escrow agent know of and agree to perform the function of receiving a deposit.[4] As outlined in Johansson v. United States, 336 F.2d 809, 815 (5th Cir. 1964),

3. Kelly v. Steinberg, 148 Cal.App.2d 211, 306 P.2d 955 (1957).

4. Rowe v. Shehyn, 192 F.Supp. 428 (D. D.C.1961).

The essential elements of a valid escrow arrangement are a contract between the grantor and the grantee agreeing to the conditions of a deposit, delivery of the deposited item to a third party, and communication of the agreed upon conditions to the third party. [Citations omitted.]

Similarly, in Home Ins. Co. of New York v. Wilson, 210 Ky. 237, 275 S.W. 691, 693 (1925), the court explained:

Whatever may be the other necessary elements to create an escrow delivery, all the text-writers and adjudged cases hold that there must be a depositary with instructions from the parties as to their agreement concerning the delivery and taking effect of the escrow instrument, and such instructions to the depositary constitute what the law denominates the "escrow agreement," which is a different thing from the instrument placed in escrow. In other words, there can be no escrow delivery except upon some condition agreed upon by the parties, and which condition contains the terms of the escrow agreement, and must be communicated to the depositary, and his agreement to accept the custody of the instrument upon those terms, for until then his responsibility does not attach.

. . .

■ Clearly, the facts in the instant case fall short of establishing the existence of such an escrow agreement. Appellant never instructed Turner that he was to receive and hold the funds upon the condition that the loan be secured by a first trust on the property. Viewing the evidence in the light most favorable to appellant,[5] the only reference to a first trust between Turner and Kennedy was a vague statement by Turner that he had handled first trusts for Workshop 221, Inc. on other occasions. Kennedy gave Turner no instructions relating to the priority of his lien, or conditions precedent to disbursement of the funds, nor did he order a title search on the property prior to consummating the loan. In the absence of such an agreement, there is no basis for a finding of liability on the part of Turner's principal, District-Realty.

Affirmed.

---

5. Lo Medico v. Simkowitz, D.C.Mun.App., 158 A.2d 681 (1960).