[L. A. No. 29618.   In Bank.   May 6, 1969.]

GROVER ESCROW CORPORATION et al., Plaintiffs, Cross-defendants and Respondents, v. JOSEPH G. GOLE, Defendant, Cross-complainant and Appellant.

Huckenpahler & Dion and Michael A. Dion for Defendant, Cross-complainant and Appellant.

Carden, Lae & Gray, Arthur W. Gray, Jr., Betts & Loomis and John A. Loomis for Plaintiffs, Cross-defendants and Respondents.

MOSK, J.—This case involves statutory construction of Business and Professions Code section 24074, governing transfers in escrow of liquor licenses. The precise issue is whether that section precludes a creditor from establishing priority over the escrowed proceeds of such a transaction by attachment or garnishment. We conclude that section 24074 represents a mandatory and exclusive scheme for payment of creditors of liquor license transferors, giving creditors who comply with that section priority over those who employ any form of levy on the proceeds.

Seller agreed to sell to Buyer a cocktail lounge, including transfer of the liquor license. Business and Professions Code section 24074 at that time provided that before such a transfer could be consummated, the parties "shall establish an escrow . . . and the intended transferee shall deposit with the escrow holder the full amount of the purchase price or consideration. The licensee and intended transferee shall also enter into an agreement, which agreement shall be deposited with the escrow holder, directing the escrow holder, out of the purchase price or consideration, to pay the claims of the bona fide creditors of the licensee who file their claims with the escrow holder before the escrow holder is notified by the department

[of Alcoholic Beverage Control] of its approval of the transfer of the license or if the purchase price or consideration is not sufficient to pay the claims in full, to distribute the consideration pro rata to the creditors of the licensee. . . ."

On November 5, 1964, the parties opened an escrow as required. However it was not until December 16, 1964, after receipt of approval from the department on November 25, that they amended the escrow instructions to direct pro rata payment of creditors in conformity with section 24074. Meanwhile, defendant Gole, a judgment creditor of Seller, attempted to garnish any chose in action owed by the escrow holder (Escrow) to Seller.[1] At all times the sale consideration was insufficient to pay in full all bona fide creditors, including Gole, who filed claims pursuant to section 24074.

After receiving notice of department approval, Escrow first distributed part of the consideration to those creditors whose payment was determined necessary to deliver "clear title" to Buyer.[2] Escrow then interpleaded all claimants and sought direction as to distribution of the remaining fund. The single issue raised on appeal is whether by virtue of being the only creditor to garnish the fund Gole gained priority over his fellow creditors who filed timely claims with Escrow.

Several factors compel us to conclude that section 24074 supersedes all other remedies against the sale proceeds for creditors of liquor license transferors. ■ At the outset, we construe the provisions of section 24074 to be mandatory, not directory. The term "shall" was clearly meant to leave the parties no alternative but to adhere to the prescribed escrow

---

[1] A writ of attachment was levied by Gole on all property of Seller in the possession or control of Escrow on October 29, and writs of execution were levied on November 30 and December 17, 1964. In view of our resolution of this case we need not determine which, if any, of the three attempted garnishments would effectively have reached the escrowed funds in the absence of the provisions of section 24074. (Cf. *Brunskill* v. *Stutman* (1960) 186 Cal.App.2d 97, 104-105 [8 Cal.Rptr. 910].)

[2] Although the point is not specifically raised on appeal, there appears to have been some question at trial as to the propriety of Escrow's preferential payment of claims constituting a cloud on Seller's title. Escrow argues such payment was necessary to complete the transaction and entitle Seller (or his other creditors) to the consideration. We find it unnecessary to resolve this issue, as the instant appeal is premised entirely on the effect, if any, of the attempted garnishment by Gole; there is no attack on the trial court's finding that, aside from that garnishment, Escrow's payments were proper. The point is now moot as a matter of statutory construction, since the two classes apparently preferred by Escrow—revenue claims and secured creditors—are now specifically given priority by recent amendments to section 24074. (See fn. 3 *post.*) Section 24076 would clearly make any preferences other than those approved by statute unlawful.

64

procedures. (See, e.g., *Pacific Firestone Escrow Co.* v. *Food Giant Markets, Inc.* (1962) 202 Cal.App.2d 155, 157-158 [20 Cal.Rptr. 570] ; 39 Ops.Cal.Atty.Gen. (1962) 216-217.) Thus section 24074 must be read into every liquor license transfer, and the parties cannot defeat the section simply by failure or delay, deliberate or inadvertent, in issuing the required instructions to the escrow holder. (Cf. *Greve* v. *Leger, Ltd.* (1966) 64 Cal.2d 853, 860-861, fn. 3 [52 Cal.Rptr. 9, 415 P.2d 824].)

The procedures prescribed by section 24074 must be construed not only as mandatory but also as exclusive. ■■■ Business and Professions Code sections 24070 through 24082 provide a comprehensive program to regulate liquor license transfers, giving unmistakable indication of the Legislature's determination to exercise its power to control every phase of such transfers. (*Pacific Firestone Escrow Co.* v. *Food Giant Markets, Inc.* (1962) *supra,* 202 Cal.App.2d 155, 158. ■■■ Section 24074 was intended to protect not only buyers and sellers of liquor licenses, but also the creditors of sellers, by creating a payment plan dependent upon submission of claims, and not upon the usual commercial self-help procedures of attachment and execution. (See *Harriman* v. *Tetik* (1961) 56 Cal.2d 805, 812 [17 Cal.Rptr. 134, 366 P.2d 486].) This is consistent with other aspects of the overall transfer scheme, particularly section 24076, which precludes the use of liquor licenses *or their transfer* as security devices. (*Greve* v. *Leger, Ltd.* (1966) *supra,* 64 Cal.2d 853, 857 ; *Holt* v. *Morgan* (1954) 128 Cal.App.2d 113, 116 [274 P.2d 915] ; see also Code Civ. Proc., § 688.)

Section 24076 provides in part: "No license shall be transferred if the transfer is . . . to gain or establish a preference to or for any creditor of the transferor, *except as provided by section 24074,* or to defraud or injure any creditor of the transferor." (Italics supplied.) The italicized phrase, added in 1967 subsequent to the instant transaction, refers to an amendment to section 24074, in which the pro rata scheme was replaced by a rigidly ordered scale of priorities, from secured creditors at the top, such as those apparently paid first by Escrow, through revenue, wage, and similar claims, to residuary creditors at the bottom.[3]

---

[3]The new order of priorities under section 24074 is as follows:

"First, To the payment of claims of secured creditors to the extent of the proceeds which arise from the sale of the security;

"Second, To the United States for claims based on income or with-

From the statutes individually and collectively, we find it abundantly clear that in the field of liquor license transfers the Legislature has established a mandatory and exclusive system of priorities intended to replace other procedures such as ordinary levy and execution, in order to protect all parties to the transaction and, at the same time, to prevent use of a liquor license or its transfer directly or surreptitiously as a security device.[4]

Aside from legislative intent, there are persuasive pragmatic reasons to hold the plan established by the Legislature to be mandatory and exclusive. If a creditor within any one of the enumerated groups (or, under the previous statutory wording, any creditor) could change his priority status by the simple device of a timely levy, the entire legislative program would inevitably disintegrate into a "race to the courthouse." Instead of being protected by the provisions of section 24074, creditors who relied solely on that statute would be left without recovery or recourse unless the available resources were sufficient to satisfy all claimants. In the frequent circumstance of inadequate funds on hand, the elaborate statutory procedures would be useless—or even harmful—to compliant creditors and would understandably be ignored. Therefore it is imperative that the orderly procedures of section 24074 be exclusive, because if nonexclusive they become ineffective.

holding taxes; and thereafter for claims based on any tax other than taxes specified in Section 24049;

"Third, To the payment of claims for wages and salaries earned not more than 90 days prior to the transfer of the license and to the payment of claims on mechanics' liens;

"Fourth, To the payment of escrow fees and the payment of claims for prevailing brokerage fees for services rendered and claims for reasonable attorney's fees for services rendered;

"Fifth, To the payment of claims for goods sold and delivered to the transferor for resale at his licensed premises;

"Sixth, To the payment of all other claims. The last category of creditors for whom there are not sufficient assets available for the payment of the claim in full, shall be paid pro rata.''

Section 24074.1 has also been added, setting out in detail the duties of the escrow holder.

[4]The Legislature might well have recognized that were garnishment an effective means of gaining priority, it would be all too easy for a transferor to avoid the prohibition against use of a license or transfer as a security device by simply agreeing to transfer the license and imparting the information as to timing of the agreement to his creditor, who could then win the "race to the courthouse" before other creditors were aware of the proposed transfer. Sections 24074 and 24076 are designed to negate such temporal priority, whether based on advance knowledge or on swiftness of foot, and to assure that any preference given a creditor of a liquor license transferor will result solely from compliance with statutory procedures.

While the recent adoption of a comprehensive order of priorities in section 24074 lends weight to the overriding legislative purpose, this design was equally clear in 1964 at the time of the instant transaction. The statute as it then stood was no less mandatory, and it was no less ineffective if allowed to be circumvented by ordinary attachment procedures. Therefore we hold that the attempted garnishment by Gole of the fund held by Escrow created no priority over other bona fide creditors who filed timely claims with Escrow in accordance with the mandate of section 24074.

Under the circumstances, the trial court's judgment decreeing pro rata distribution to all bona fide creditors who filed claims before approval of the transfer was correct. The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.