[Civ. No. 37273. Second Dist., Div. Two. Jan. 18, 1971.]

GRAMERCY ESCROW COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MARGARET MARSH, Real Party in Interest.

**COUNSEL**

Mack, Nast & Boss and Thomas Nast for Petitioner.

No appearance for Respondent.

V. Lane Knight for Real Party in Interest.

## OPINION

ALARCON, J.*—The Gramercy Escrow Company (hereinafter referred to as the escrow holder) seeks a writ of mandate to set aside the order of the Superior Court of Los Angeles County denying a motion to quash an ex parte order requiring the escrow holder to appear at an attachment proceeding.

### Factual Background

On or about June 18, 1969, an escrow was opened pursuant to the provisions of Business and Professions Code section 24074, concerning the sale and purchase of a cocktail lounge business known as "The Circle Inn," by the Jo-Goss Ltd., corporation from Thomas J. Winchester (hereinafter referred to as debtor-transferor). The escrow called for the sale of furniture, fixtures, equipment, trade name, goodwill, leasehold improvements and an on-sale general liquor license. The Gramercy Escrow Company was named as escrow holder.

Prior to the receipt by the escrow holder of a notice of the approval of the transfer of the liquor license from the Department of Alcoholic Beverage Control, Margaret Marsh, real party in interest (hereinafter referred to as creditor) served an attachment on the escrow holder against the funds of the debtor-transferor. The escrow holder filed a timely return alleging inter alia that it was "NOT INDEBTED. LICENSE NOT ISSUED, ESCROW NOT CLOSED."

Pursuant to an ex parte application, the creditor obtained an order for the appearance of the escrow holder in the superior court as garnishee "to testify under oath respecting the property of defendant in the possession or under the control of said Garnishee." The escrow holder's motion to quash the order requiring it to appear was denied by the superior court on September 16, 1970.

### Problem

■ Are the provisions of section 545 of the Code of Civil Procedure applicable to a person holding funds in an escrow established pursuant to section 24074 of the Business and Professions Code in connection with the sale of a cocktail lounge and the transfer of a liquor license?

### Discussion

Section 545 of the Code of Civil Procedure provides in pertinent part:

*Assigned by the Chairman of the Judicial Council.

"Any person . . . having in his possession, or under his control, any . . . personal property belonging to the defendant, may be required to attend before the court or judge, or a referee appointed by the court or judge and be examined on oath respecting the same. . . . The court, judge or referee may, after such examination, order personal property, capable of manual delivery, to be delivered to the sheriff, constable, or marshal on such terms as may be just, having reference to any liens thereon or claims against the same, and a memorandum to be given of all other personal property, containing the amount and description thereof."

The escrow holder contends that Business and Professions Code, section 24074 supersedes all other statutory remedies against the sale proceeds for creditors of liquor license transferors including the requirement of section 545 of the Code of Civil Procedure that any person holding personal property of a defendant on a civil action make a disclosure under oath concerning such assets.

The position of the creditor, may be summarized as follows:

1. Section 24074 applies solely to escrows involving a transfer of an alcoholic beverage license. The Gramercy Escrow Company may have other escrows pending involving personal property of the defendant not connected with an alcoholic beverage license, not covered by section 24074. Therefore, the creditor should be able to examine the escrow holder as to all personal property not specifically covered by section 24074.

2. Section 24074 applies solely to the sale of a liquor license as distinguished from furniture, fixtures and equipment used in connection with the sale of alcoholic beverages.

3. The creditor has a statutory right to require the escrow holder to state under oath whether the only personal property in his possession concerns the transfer of a business or alcohol beverage license, even though such property may not be the object of an execution.

We have concluded that under the limited facts made available to us the escrow holder cannot be compelled to give testimony pursuant to section 545. We are compelled to this conclusion by the interpretation given to section 24074 by the Supreme Court in *Grover Escrow Corp.* v. *Gole*, 71 Cal.2d 61 [77 Cal.Rptr. 21, 453 P.2d 461]. In *Grover, supra,* at page 65, the court stated: "From the statutes individually and collectively, we find it abundantly clear that in the field of liquor license transfers the Legislature has established a mandatory and exclusive system of priorities intended to replace other procedures such as ordinary levy and execution, in order to protect all parties to the transaction and, at the same time, to

prevent use of a liquor license or its transfer directly or surreptitiously as a security device. [Fn. 4 omitted.]

"Aside from legislative intent, there are persuasive pragmatic reasons to hold the plan established by the Legislature to be mandatory and exclusive. If a creditor within any one of the enumerated groups (or, under the previous statutory wording, any creditor) could change his priority status by the simple device of a timely levy, the entire legislative program would inevitably disintegrate into a 'race to the courthouse.' Instead of being protected by the provisions of section 24074, creditors who relied solely on that statute would be left without recovery or recourse unless the available resources were sufficient to satisfy all claimants. In the frequent circumstance of inadequate funds on hand, the elaborate statutory procedures would be useless—or even harmful—to compliant creditors and would understandably be ignored. Therefore it is imperative that the orderly procedures of section 24074 be exclusive, because if nonexclusive they become ineffective."

Section 24074.1[1] requires the escrow holder to advise each creditor who has filed a claim against the escrow as to the nature and total of the assets placed in escrow.

Section 24074.1 makes it mandatory for an escrow holder to give the creditor of a transferor of a liquor license the same type of information available to a creditor under section 545 concerning personal property not connected with the transfer of an alcoholic beverage license. In view of the above quoted language from *Grover Escrow Corp.*, we must hold the information disclosure requirements of section 24074.1 are the exclusive discovery procedures available to a creditor of a liquor license transferor. To require such an escrow holder to testify under oath concerning information already divulged to all creditors, would not only be a

---

[1]Section 24074.1 provides as follows: "Any person desiring to act as an escrow holder under Section 24074 shall: 1. Comply with all the applicable provisions of Chapter 1 (commencing with Section 17000) of Division 6 of the Financial Code. 2. Not more than 10 days after receiving a claim from a creditor, said escrow holder shall acknowledge receipt of each claim; and 3. Not more than 10 days after the license has been transferred and prior to the distribution of the assets held by said escrow holder he shall advise each creditor who filed a claim against the escrow whether or not there are sufficient assets in the escrow to pay all creditors in full. If the assets in the escrow are sufficient to pay all creditors in full, said escrow holder shall also advise each creditor of the date on or before which payment will be made. If there are not sufficient assets to pay all creditors in full, he shall then advise each creditor who filed a claim of the following: (a) the total assets placed in escrow with him and the nature of each asset; (b) the name of each creditor who filed a claim against the escrow and the amount of said claim; (c) the amount he proposes to pay each creditor; and (d) the date on or before which said amount will be paid to the creditors."

cumulative redundancy but also a burdensome and fruitless exercise since such property is not subject to ordinary levy or execution.

■ Section 24074 requires the opening of an escrow "if the intended transfer of the business *or* license involves a purchase price or consideration" (italics added). By use of the alternative disjunctive *or* it is clear that the Legislature intended to include the sale of a business involving the sale of alcoholic beverages within the procedures set forth in section 24074 and 24074.1. The term "business" is not defined in the Alcoholic Beverage Control Act. Business has no definite or legal meaning (Black's Law Dict. (4th ed.)). "If dictionaries are searched the definitions are found to be vague and shifting, such as 'employment,' 'work,' 'buying and selling,' and among other definitions 'a commercial or industrial enterprise' " (*Estate of Friedrichs,* 107 Cal.App. 142, 144 [290 P. 54]). However, a clue to the Legislature's intent in the use of the word "business" is found in section 24074.1 which requires the escrow holder to list "the total assets placed in escrow with him and the nature of each asset." As stated in *Grover Escrow Corp.* v. *Gole, supra,* at page 64: "Business and Professions Code sections 24074 through 24082 provide a comprehensive program to regulate liquor license transfers, giving unmistakable indication of the Legislature's determination to exercise its power to control every phase of such transfers. (*Pacific Firestone Escrow Co.* v. *Food Giant Markets, Inc.* (1962) *supra,* 202 Cal.App. 2d 155, 158 [20 Cal.Rptr. 570]. Section 24074 was intended to protect not only buyers and sellers of liquor licenses, but also the creditors of sellers, by creating a payment plan dependent upon submission of claims, and not upon the usual commercial self-help procedures of attachment and execution." To carry out the Legislature's purpose we construe the term "business" to include the trade name, goodwill, furniture, fixtures, equipment and any other personal property or building improvements customarily used in connection with the sale of alcoholic beverages. ■ No showing has been made before us that the escrow holder has other personal property not connected to the transfer or the sale of a cocktail lounge and alcoholic beverage license.

In a declaration filed in support of the "APPLICATION FOR THE ORDER FOR APPEARANCE OF GARNISHEE," the creditor alleged "I am informed and I believe, the said Garnishee is, in fact, holding property of the defendants, THOMAS J. WINCHESTER and MARY F. WINCHESTER, TO WIT: Executed documents in reference to title to CIRCLE INN BAR, located at 2011 Pacific Coast Highway, Lomita California, and all personal property situated thereat and pertinent thereto.

"I am informed and I believe, the said Garnishee is in possession of the

said property as an escrow holder pending completion of the sale of said CIRCLE INN BAR, or, was in such possession on August 5, 1970."

Thus, the only escrow described by the creditor specifically referred to the sale of the business of an alcoholic beverage licensee.

Clearly section 24074 would not have any application to any other escrow involving assets of a debtor simultaneously held by the petitioner concerning a sale of property not regulated by the Alcoholic Beverage Control Act. Had the creditor made such a showing in his application for an order pursuant to section 545, the trial court could have ordered the escrow holder to testify but only as to an escrow not within the scope of section 24074.

The alternative writ is discharged. Let a peremptory writ of mandate issue requiring the trial court to vacate its order of August 24, 1970, requiring the petitioner to testify under oath concerning the personal property in possession of the escrow holder and described in the application for said order as pertaining to the sale of the business of an alcoholic beverage licensee.

Fleming, Acting P. J., and Compton, J. concurred.