[Civ. No. 13185. Fourth Dist., Div. Two. Mar. 13, 1974.]

NORMAN G. DOYLE, Plaintiff, Cross-defendant and Appellant, v. THOMAS R. COUGHLIN et al., Defendants and Respondents; GROVER ESCROW CORPORATION, Defendant, Cross-complainant and Respondent; BANK OF AMERICA, Cross-complainant and Appellant; UNITED STATES OF AMERICA, Cross-defendant and Appellant.

## Counsel

George McGill for Plaintiff, Cross-defendant and Appellant.

Robert H. Fabian, Harris B. Taylor and William C. Rust, Jr., for Cross-complainant and Appellant.

William D. Keller, United States Attorney, Charles H. Magnuson and Calvin M. Young III, Assistant United States Attorneys, for Cross-defendant and Appellant.

No appearance for Defendants and Respondents.

Carden & Gray and Arthur W. Gray, Jr., for Defendant, Cross-complainant and Respondent.

## Opinion

**GABBERT, J.**—This is an appeal from an action in interpleader brought by Grover Escrow Corporation ("Grover"). At issue is ownership of $8,576.08 currently held on deposit in connection with a combined liquor

license-bulk sale escrow. The controverted escrow was established to facilitate sale of a restaurant-cocktail lounge.

King's Row Restaurant, Inc. ("Buyer") and Kric Enterprises, Inc. ("Seller") signed escrow instructions with Grover on June 14, 1967. Pursuant to these instructions, as amended, Buyer was to place into escrow $65,760 (in a combination of cash and notes) and Seller was to deliver an executed bill of sale for the stock in trade, fixtures, equipment and goodwill of its restaurant-cocktail lounge. Consummation of the bulk sale portion of the above sale was conditioned, by express terms of the escrow, upon Buyer's obtaining the state's approval for the transfer to Seller of its (Buyer's) eating and on-sale general liquor license.

Buyer began operation of its purchased business on September 8, 1967, the date the liquor license was transferred from Seller. At that time, there was—as there is now—a cash balance of $8,576.08 in the escrow.[1]

Buyer operated its business, known as King's Row Restaurant, until December 1968 or January 1969. Around those times, the Internal Revenue Service ("I.R.S.") levied upon and sold the liquor license, fixtures and equipment. The levy against the liquor license, in December 1968, was for unpaid tax liabilities of Buyer. These tax liabilities all arose *after* the transfer of the liquor license from Seller.

A second federal levy, this time against certain items of restaurant fixtures and equipment, occurred in January 1969. The I.R.S. applied the proceeds from the resulting sale, not for the account of Buyer, but rather for the account *of Seller*.[2]

The instant interpleader action involves claims by Seller's creditors— appellants Doyle and Bank of America National Trust and Savings Association ("Bank")—and by the United States, which has unpaid tax claims

---

[1] The current escrow balance represents the remaining portion of Buyer deposits into escrow of $20,760. Of that latter sum, $12,146.42 was paid (prior to the transfer of the liquor license) to the State Board of Equalization and $57.50 was paid for the recording of documents.

The record is unclear as to when or whether Buyer deposited into escrow a $45,000 promissory note. Such a note was to constitute the remainder of the $65,760 consideration for the transfer of the liquor license, fixtures, and equipment of Seller's restaurant-cocktail lounge.

[2] Both Buyer and Seller had long overdue federal tax liabilities during December 1968 and January 1969. The I.R.S. consequently initiated the above outlined levies and sales. The legal propriety (and consistency) of such levies is not an issue before this court. It should be observed, however, that the United States treated the above Buyer-Seller transaction as effectively transferring the liquor license, but not transferring the items under the bulk sale portion of the escrow.

against Buyer. Both Doyle and Bank argue that state liquor laws, properly interpreted, provide that title to the escrow balance lies with creditors of Seller. Doyle and Bank maintain that, at the time the federal government acquired tax liens against Buyer, it (Buyer) no longer had an ownership interest in the $8,576.08. The United States, on the other hand, contends title to that sum must be determined by general escrow law. The United States then argues the instant escrow never closed, thereby preserving with Buyer the title and right to possession of the here contested fund. The United States urges, since its tax claims against Buyer exceed that amount, that it (the United States) be awarded the *entire* escrow balance.[3]

The trial court, in its findings of fact and conclusions of law, reached a decision substantially in accord with the United States' position. The court found the "escrow did not close" and, as a result, "title to the sum of $8,576.08 is in the buyer, King's Row Restaurant, Inc." (*Kelly* v. *Steinberg*, 148 Cal.App.2d 211, 217-218 [306 P.2d 955].) The court then found, of the escrow balance, Grover was entitled to $2,413.50 in compensation for its escrow services and for its attorney's fees. The remaining $6,162.58 was awarded to the United States, in partial payment of $15,039.56 claimed to be owed by Buyer to the United States.

■ Appellants Doyle and Bank correctly argue a federal tax levy reaches only the "property and rights to property" of the levied-against taxpayer. (26 U.S.C. § 6321.) Further, they properly note that state law, not federal law, is determinative on the question of whether such a taxpayer has any then extant interest in the levied-upon property. (*Aquilino* v. *United States*, 363 U.S. 509, 513 [4 L.Ed.2d 1365, 1368, 80 S.Ct. 1277]; *United States* v. *Bess*, 357 U.S. 51, 53 [2 L.Ed.2d 1135, 1139, 78 S.Ct. 1054]; *United States* v. *Lester*, 235 F.Supp. 115, 119-120.) Doyle and Bank, citing these propositions, then argue that California Business and Professions Code section 24074[4], vested the escrow funds with Seller's

---

[3]Note that, though the Buyer and Seller both have (or have had) overdue tax liabilities, the instant claim of the United States is directed only to Buyer's possible interest in the Grover escrow account.

[4]Business and Professions Code section 24074, in pertinent part, reads: "Before the filing of such a transfer application [for a liquor license] with the department [of Alcoholic Beverage Control], if the intended transfer of the business *or* license involves a purchase price or consideration, the licensee and the intended transferee shall establish an escrow. . . , and the intended transferee shall deposit with the escrow holder the full amount of the purchase price or consideration [for the business]. The transfer application shall be accompanied by a description of the *entire consideration.* . . . The licensee and intended transferee shall also enter into an agreement, . . . directing the escrow holder . . . to pay out of the purchase price or consideration, the claims of the bona fide creditors of the licensee who file their claims with the

creditors when Grover was notified the state approved the transfer of the liquor license to Buyer. Notification of this transfer, as indicated earlier, occurred prior to the government's establishment of tax liens against Buyer.

By contrast, the United States denies the existence of any vested claim by Seller or its creditors in the escrow fund. Pursuing counter argument, the United States cites to this court several cases discussing ownership rights to money deposited in escrow. (See, e.g., *Kelly* v. *Steinberg, supra,* 148 Cal.App.2d 211; *Barboza* v. *Dellota,* 130 Cal.App.2d Supp. 890 [279 P.2d 219]; *Kellogg* v. *Curry,* 101 Cal.App.2d 856 [226 P.2d 381].) These cases hold that title to the Buyer's money (deposited in escrow) does not pass to the Seller until *all* escrow conditions have been fulfilled. Business and Professions Code section 24074, is asserted not to change this general rule, but rather *merely* to establish priorities between competing creditor classes. Presumptively, under the government's thesis, these priorities would come into operation only after completion of all escrow conditions and formal closing of the escrow. In the instant case, it was found that such a closing did not take place.[5]

Examination of the above arguments, in the light of case law and relevant statutes, leads this court to uphold the position of appellants Doyle and Bank. We find inescapable the conclusion that sections 24070 through 24082 of the Business and Professions Code provide a highly

---

escrow holder *before* the escrow holder is notified by the department of its approval of the transfer of the license or if the purchase price or consideration is not sufficient to pay the claims in full, to distribute the consideration as follows: [Italics added.]

". . . . . . . . . . . . . . . . . . . .

"Third, to the United States for claims based on income or withholding taxes; . . .;

". . . . . . . . . . . . . . . . . . . .

"Fifth, to the payment of escrow fees . . . and claims for reasonable attorney's fees for services rendered;

"Sixth, to the payment of claims for goods sold and delivered to the transferor for resale at his licensed premises and the payment of claims for services rendered, performed or supplied in connection with the operation of the licensed business;

"Seventh, to the payment of all other claims. The payment of these claims if sufficient assets are not available for the payment of the claim in full shall be paid pro rata.

". . . The agreement *shall* also provide that the escrow holder *shall* make the payment or distribution within a reasonable time after the completion of the transfer of the license." (Italics added.)

[5]The trial court's conclusion that the escrow agreement did not close, in the sense that all conditions precedent in the escrow agreement were not complied with, is supported by substantial evidence. For example, according to the escrow agreement, Seller was to deposit with Grover a bill of sale for the restaurant fixtures and equipment. This was not done, and Seller does not here contend otherwise.

comprehensive program to regulate liquor license transfers. This program, in fact, has been described by our Supreme Court as "giving unmistakable indication of the Legislature's determination to exercise its power to control every phase of such transfers." (*Grover Escrow Corp.* v. *Gole,* 71 Cal. 2d 61, 64 [77 Cal.Rptr. 21, 453 P.2d 461].)

Section 24074 requires the opening of an escrow "if the intended transfer *of the business* or license involves a purchase price or consideration." (Italics added.) ■ The procedures and priorities of this section are mandatory and exclusive. (*Grover Escrow Corp.* v. *Gole, supra,* 71 Cal. 2d 61, 64-66.) They are designed to protect not only buyers and sellers of liquor licenses, but also the creditors of sellers. (*Ibid.* p. 64.)

Protection for creditors of the licensee-seller is achieved by creating a payment plan dependent upon submission of creditor claims *prior* to the date when the escrow holder is notified of the state's approval of the liquor license transfer. Such creditor protection (from the escrow fund) is limited to timely filing creditors. (*Pacific Firestone Escrow Co.* v. *Food Giant Markets, Inc.,* 202 Cal.App.2d 155, 157 [20 Cal.Rptr. 570].) ■ This escrow fund-creditor protection plan is intended (1) to prevent use of a liquor license or its transfer, directly or surreptitiously, as a security device and (2) to eliminate "races to the courthouse" by those creditors first privy to knowledge of an intended liquor license transfer. (*Grover Escrow Corp.* v. *Gole, supra,* 71 Cal.2d 61, 64-65.)

■ Specific language from section 24074 makes it clear that the requirement of opening an escrow applies broadly to "the intended transfer of [a] business" utilizing a liquor license. In *Gramercy Escrow Co.* v. *Superior Court,* 14 Cal.App.3d 426, 431 [92 Cal.Rptr. 397], the term "business" in the context of this section was construed to include the trade name, goodwill, furniture, fixtures, equipment and other personal property or building improvements customarily used in connection with the sale of alcoholic beverages. Thus, in the instant situation, it is evident the provisions of Business and Professions Code section 24074, encompass the entirety of the buyer-seller transaction.

■ The creditor protection purposes of section 24074 mandate the conclusion the event necessary to transfer title to the escrow fund from buyer to seller (and to seller's creditors) is the transfer of a liquor license and not, as with the ordinary escrow, the fullfillment of *all* escrow conditions by the parties. Moreover, language from sections 24074 and 24074.1 supports the thesis that transfer of a liquor license is pivotal to transfer of the ownership of the escrow fund. Thus, we note that section 24074 states the escrow "agreement shall . . . provide that the escrow holder

*shall* make the payment *or* distribution [to seller's creditors] within a reasonable time after the *completion of the transfer of the license.*" Likewise, section 24074.1 requires that "[a]ny person desiring to act as an escrow holder under Section 24074 shall . . . (3) Not more than 10 days *after the license has been transferred* and prior to the distribution of the assets held by said escrow holder . . . advise each creditor who filed a claim against the escrow [as to assets in the escrow fund]." From the above, it is apparent the Legislature intended transfer of a liquor license to change ownership of the section 24074 escrow fund.

■ ■ The described ownership change occurs regardless of whether or not the buyer and seller have previously complied with escrow instructions concerning, inter alia, consideration and executed bills of sale. This conclusion is necessary. Any other conclusion would open the door to transfers of parts of liquor-utilizing businesses without providing the required creditor protection.[6]

The state government, in the instant case, transferred Seller's liquor license to Buyer on September 8, 1967. As of that date, following the mandatory and exclusive provisions of section 24074, we conclude the escrow monies belonged to Seller and his timely filing creditors. Since the United States does not here claim to have been a creditor *of Seller* at the time of the transfer of the license, it must fail in its attempt to establish ownership rights to the escrow balance.

In view of our finding the state has enacted specific legislation to control all facets of the transfer of liquor licenses, and in view of our observation that such legislation evidences a special regard for creditors (of the licensee-seller), this court finds to be inapposite the cases on general escrow law cited by the United States. These cases—*Kelly* v. *Steinberg, supra,* 148 Cal.App.2d 211; *Barboza* v. *Dellota, supra,* 130 Cal.App.2d Supp. 890; and *Kellogg* v. *Curry, supra,* 101 Cal.App.2d 856—involve sales of real estate, but without accompanying liquor licenses. Law in these

---

[6]The statutory scheme of Business and Professions Code, sections 24073-24074.2 envisions, in this case, that the entire purchase price of the restaurant-cocktail lounge and liquor license will be in the hands of the escrow holder prior to the time the liquor license is transferred. (This may or may not have occurred. See fn. 1.) A prudent buyer would consequently require the licensee-seller to have all necessary bills of sale (for fixtures and equipment) on deposit with the escrow holder prior to the transfer of the liquor license. Thus, when the state would ultimately approve and transfer the liquor license from seller to buyer, property and money would change hands as contemplated by the parties. If the escrow fund is then found to be insufficient to cover all creditor claims, the priority-establishing portion of section 24074 would come into play.

cases focuses on the buyer-seller rights in escrowed funds; the opinions are unconcerned with protection of creditors.

The judgment insofar as it finds Grover entitled to $2,413.50 in compensation for its escrow services and attorney's fees is affirmed. Grover's claim is squarely justified by Business and Professions Code section 24074; its claim became vested upon the transfer to Buyer of the Seller's liquor license.

The judgment insofar as it awards $6,162.58 to the United States is reversed. The escrow fund interest of Buyer (for whose account the government seeks to collect back taxes) ceased to exist upon the transfer of the subject liquor license from Seller to Buyer. This transfer occurred *prior* to the accrual of the back taxes which the government now seeks to collect.

Appellants Doyle and Bank, who ask this court to award them the funds which the trial court awarded the United States, do not show, in the record, they filed their claims with Grover *prior* to the transfer of the liquor license and thus are entitled to such funds.

The judgment is therefore affirmed as to Grover and reversed as to the United States. The cause is remanded to the trial court for a determination as to ownership of the remaining $6,162.58 in the escrow account.

Gardner, P. J., and Kaufman, J., concurred.