In re M.B.K., INC., a California corporation, Debtor(s).

SIPLE & ORROCK, for itself and as representative of the Class, Plaintiff(s),

v.

Martin A. RECHNITZER, Trustee, Defendant(s).

Martin A. RECHNITZER, Trustee, Plaintiff(s),

v.

SIPLE & ORROCK, a Professional corporation, Defendant(s).

Martin A. RECHNITZER, Trustee, Plaintiff(s),

v.

CHASE BROTHERS DAIRIES, INC., Defendant(s).

Martin A. RECHNITZER, Trustee, Plaintiff(s),

v.

WEAVER LEIPER & OGDEN, Defendant(s).

Martin A. RECHNITZER, Trustee, Plaintiff(s),

v.

STAR FREE PRESS, Defendant(s).

Bankruptcy No. LA 85–07714–NCA. Adv. Nos. LA 87–0277–NCA, LA 86–2342–NCA, LA 86–2349–NCA, LA 86–2371–NCA and LA 86–2372–NCA.

United States Bankruptcy Court, C.D. California.

Oct. 9, 1987.

Michael D. Warner, Robinson, Diamant, Brill & Klausner, Los Angeles, Cal., for trustee/defendant, Martin Rechnitzer.

Randolph Edward Siple, Siple & Orrock, Ventura, Cal., for plaintiffs/defendants Chase Bros. Dairies, Inc., Weaver Leiper & Ogden, and Star Free Press.

Robinson, Wolas & Diamant, Los Angeles, Cal.

Lowthrop, Richards, McMillan, Miller, Conway & Templeman, Oxnard, Cal.

## AMENDED MEMORANDUM OF DECISION

CALVIN K. ASHLAND, Bankruptcy Judge.

### BACKGROUND

This memorandum pertains to a complaint to enjoin the trustee from prosecuting complaints to recover preferential transfers and four complaints by the trustee to recover preferences. On April 29, 1987 I heard the complaints for preferences and granted the trustee's motion to dismiss the complaint to enjoin. On the trustee's complaints the parties filed post-trial briefs.

When dismissing the complaint to enjoin I denied the trustee's motion for sanctions requested pursuant to Rule 9011. I said

that the attorney for the plaintiff relied in good faith on *In re Newcomb*, 744 F.2d 621 (8th Cir.1984) and *Guy v. Abdulla*, 57 F.R.D. 14 (N.D.Ohio, E.D.1972). I was wrong. I will discuss these cases later.

The trustee brought several complaints to recover preferences, including the four which are the subject of this memorandum. Necessarily, each transferee is a defendant in a separate complaint. Bankruptcy Rule 7004 requires an adversary proceeding to recover money or property. The facts of a transfer are unique to the transferee. Procedurally and administratively, as well, preference actions lend themselves to separate actions against separate transferees. Yet, the plaintiff in the motion to enjoin criticizes the trustee for bringing separate actions alleging that by so doing the trustee "divided and conquered" the transferees.

The plaintiff misunderstands preferences. As creations of Congress they achieve one of the objectives of bankruptcy —equality among creditors. The trustee must prove certain elements. The transferee has certain defenses. Characteristically, preference actions are not answered because the transferee admits the transfer, the transferee remits the amount of the transfer, or the transferee furnishes evidence of a valid defense and the trustee dismisses the complaint. Transferees rarely litigate a defense.

It is axiomatic that an imperfect bulk sale creates preferences. A bulk sale is imperfect when all creditors of the same class do not receive the same percentage payment from assets of the transferee. Strict compliance with a bulk sale law merely protects the transfer and the assets of the transfer from attack as against the transferee.

Bulk transfers, though intended to be fair to creditors of the transferee, can be unfair. In California bulk transfers are not fair. The facts in this case illustrate the unfairness and the reason that an imperfect bulk sale creates preferences.

## FACTS

In November 1984, M.B.K., Inc. contracted to sell a restaurant and mini-mart to Larry Stone and Dave Hardy. Two escrows opened on December 19, 1984 to handle the sale of the two liquor licenses involved as required by California Commercial Code § 6106.1 and Business and Professions Code § 24074. The executors of the Jaimie Font estate, deceased owner of M.B.K., received permission from the state court to make this sale on February 11, 1985. The buyers insisted on this approval to clear their title as against the estate. Randolph E. Siple, attorney for the various defendants, and James Johnston, vice president of the debtor, were co-executors of the Font estate.

On February 12, 1985 the escrow company published notice of the transfer once in the paper. To illustrate the unfairness, the publication was in a small local newspaper of general circulation unlikely to be read by any creditor. Publication affords creditors the opportunity to file claims.

In March 1985, the state court approved a compromise between Patricia Font, the daughter of Jaimie Font, and the estate. Font excluded his only heir from his will. Patricia Font was paid $120,000, the full amount of the settlement with the Font estate, from assets of M.B.K., Inc. Thereafter, the escrow closed to the buyer's satisfaction.

The escrows closed on April 15, 1985. At the close, some money was set aside pending the settlement of adversary litigation between M.B.K. and a creditor. This action concluded and the money was returned to escrow on May 10, 1985. Final distributions occurred on May 15, 1985.

The claimants in the mini-mart escrow were paid in full. Those in the restaurant were paid pro-rata. Thus, creditors of M.B.K., Inc. who filed claims were treated unequally. The vast number of creditors uninformed of the sales got nothing.

On June 6, 1985, M.B.K. filed bankruptcy under Chapter 11. The case was converted to Chapter 7 on November 18, 1985. Martin A. Rechnitzer was appointed the Chapter 7 trustee.

In August 1986, the trustee initiated four adversary actions to avoid preferential transfer under 11 U.S.C. § 547. In Action 1, he sued Siple and Orrock (S & O), a professional corporation, to recover about $4,000. Besides being counsel for M.B.K., Randolph Siple also acts as president for M.B.K., holds a major number of shares in the company, and acts as a principal for S & O. In Action 2, the trustee sued Chase Brothers Dairies, Inc. seeking about $8,000. In Action 3, he sued Weaver, Leiper, & Ogden for both preferential transfer and fraudulent conveyance. The recovery sought in this action amounted to about $3,200. In Action 4, the trustee sued Star Free Press seeking $652. (Star filed no claim in escrow but was nevertheless paid.)

In each action the trustee alleged the following. The transfers occurred within the 90 day period preceding the bankruptcy filing. The debtor was insolvent at the time the transfers took place, as defined in 11 U.S.C. § 101(26)(A). The transfers covered antecedent debts to the creditors. The transfers enabled the creditors to receive a greater percentage of their debts than they would have received under the estate liquidation.

The creditors all denied the allegations set out above. S & O claimed that the transfers were in accordance with the California Bulk Sales Law, California Uniform Commercial Code § 6101, and following, and the Business and Professions Code § 24070. They also asserted that to require only some creditors to return the money would violate equal protection. S & O claimed that 11 U.S.C. § 348 is unconstitutional since it applies the same 90 day preference period of a Chapter 11 to a case converted to a Chapter 7. S & O claimed the payouts were not adverse to other creditors since under the UCC they could not have participated anyway. S & O set out the further defense that these transfers were in the ordinary course of business between themselves and M.B.K. The payments also were secured by a UCC–1 financing statement. There appears to be no other evidence of the UCC–1 and what it covers. Randolph Siple represents all four defendants. The defendants responded with the same set of denials and defenses. Weaver, Leiper & Ogden also denied the fraudulent conveyance allegations without asserting any defenses.

The actions were tried at the same time. In February 1987, S & O filed a complaint to enjoin the trustee and to make a determination of the preference transfer rights. S & O filed this complaint as a class action, presenting itself as the class representative. However, neither a motion nor an order for certification of a class exists. In this complaint, S & O alleged that the trustee and his attorneys conspired to attack the transfers to increase the value of the bankruptcy estate. This would have the alleged desired effect of increasing their income from the settlement. S & O further alleged the trustee decided to sue separately to weaken the creditors. It claims that the trustee should sue the creditors as a class to insure justice. Additionally, the transfers cannot be preferential since the law controlling the escrow defines such payments as non-preferential. The complaint asks for a finding that § 348 is unconstitutional, the payments were not adverse to other creditors, and the M.B.K. escrow creditors compromise a different group of creditors then those in bankruptcy. S & O asked for attorney's fees also.

On March 26, 1987 the trustee filed a motion to dismiss this complaint for failure to state a claim and a request for sanctions under Bankruptcy Rule 9011. S & O filed an opposition to this motion on April 21, 1987.

On April 13, 1987 I denied a motion by S & O to compel answers to interrogatories, to continue the trial, and to consolidate all the adversary actions including the one by S & O.

## ISSUES

Whether the transfers from escrows constitute voidable transfers of debtor's interest under Bankruptcy Code § 547(b).

Whether the court was correct in prohibiting the counsel for the defendants from testifying on behalf of the defendants.

Whether § 348 which allows the same 90 day preference period to apply to Chapter 7 cases is constitutional.

## DISCUSSION

 This case involves the transfer of two types of interests, the bulk sale and the liquor licenses, each governed by different rules. The bankruptcy court must look to state law to determine when each interest transfers. 4 Collier on Bankruptcy § 547.03[2] (15th ed. 1987). *See, In re Lewis W. Shurtleff, Inc.,* 778 F.2d 1416, 1420 (9th Cir.1985). In California, ordinary bulk interests transfer when all the conditions are met by the parties as regulated by the California Bulk Sales Law UCC § 6101 and following. However, the interest in a liquor license transfers when the Department of Alcoholic Beverage Control approves the transfer.

In *Doyle v. Coughlin,* 37 Cal.App.3d 911, 112 Cal.Rptr. 701 (1974), the court calculated the time of transfer based on the policy underlying § 24074 of the California Business and Professions Code.

The creditor protection purposes of section 24074 mandate the conclusion the event necessary to transfer title to the escrow fund from buyer to seller (and to seller's creditors) is the transfer of a liquor license and not, as with ordinary escrow, the fulfillment of all escrow conditions by the parties. Moreover, language from sections 24074 and 24074.1 supports the thesis that transfer of a liquor license is pivotal to transfer of the ownership of the escrow fund.

*Id.* at 917, 112 Cal.Rptr. at 705.

The Court of Appeals for the Ninth Circuit, ten years previously, had emphasized this special authority over the transfer in interest in liquor licenses. "Under § 24074 title to the funds in escrow after ABC approval of the transfer was in the transferor,[ ], subject to the claims of bona fide creditors." *In re Leslie,* 520 F.2d 761, 763 (9th Cir.1975).

Section 24074 also requires creditors to file their claims with the escrow holder prior to the occurrence of this transfer. Cal.Bus. & Prof.Code § 24074 (West 1959).

██ The Bankruptcy Code states the five elements of an avoidable preferential transfer: to or for benefit of a creditor, for or on account of prior debt, while debtor insolvent, within 90 days prior to filing bankruptcy, and which allows creditor to collect a greater percentage of debt than he would have under Chapter 7. 11 U.S.C. § 547(b). Section 547(f) of the Code allows trustees to rely on a presumption of insolvency during the 90 day period. The creditors have the burden to rebut this presumption. *In re Emerald Oil,* 695 F.2d 833 (5th Cir.1983).

The schedules show the debtor was clearly insolvent 20 days after the transfers. The transferees attempt to rebut the presumption of insolvency by testimony that the debts really were not owed. James T. Johnston, the M.B.K. vice president, testified that $120,000 really was not owed to him. Siple offered to testify, among other things, that nothing was owed him. I do not believe the testimony offered as to solvency. *Emerald* tells us that mere assertion of solvency does not overcome the presumption of insolvency. Furthermore, viewed in any light the fair value of debtor's assets did not exceed the liabilities on the date of the transfers.

██ In this case, the creditors admit that the interest transferred to them belonged to the debtor. Therefore, the question of when it occurred becomes paramount. The interest in the licenses passed to the buyer and the interest in the escrow funds passed to the M.B.K. and its creditors when the Department of Alcoholic Beverage Control approved the transfer. It occurred on April 16, 1985 within the 90 day period prior to M.B.K. filing bankruptcy.

██ In 1983, the Ninth Circuit outlined the law regarding the first two exceptions to the power of a trustee to avoid a payment to creditors. "The critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange." *In re Wadsworth Bldg. Components, Inc.,* 711 F.2d 122, 124 (9th Cir. 1983). The court points out that no new value is given when "the debtor was required to pay *past* debts before it would receive further credit." *Id.* at 124.

In its answer S & O attempts to invoke § 547(c)(1) stating:

The payments to SIPLE & ORROCK was [sic] for cost advanced in various litigations and secured by UCC–1 filing....

FURTHER, the litigation had to be continued and M.B.K., INC., had no way to pay for its legal fees and in order to have SIPLE & ORROCK continue to represent its interest it needed to bring its costs current and, therefore, the transfer was for contemporaneous exchange of net [sic] value.

This section of the "defense" clearly shows that S & O was paid a past debt, not exchanging new value.

■ S & O also invokes § 547(c)(2) saying that "[t]he sale and transfer were in the ordinary course of business of M.B.K., INC. [and] [t]he transfer was for a contemporaneous exchange of money for asset." S & O Trial Brief, p. 11. The evidence does not support this statement. M.B.K.'s business was to run these establishments, not buy and sell them. Unfortunately for M.B.K., it slipped into insolvency and sold the businesses. It does not touch on the interest transferred to the creditors by the debtor in this particular transaction.

The holding of *In re Flooring Concepts*, 37 B.R. 957 (9th Cir. BAP 1984), can be distinguished from this case since the facts are materially different. In that case, the BAP found that payment to a creditor of a debtor-subcontractor by a third party contractor was not a preferential transfer. *Id.* at 963. The Panel reasoned that, although the payment appeared to be on the account of the debtor, in fact the third party had entered into an "independent obligation." *Id.* at 961.

The remaining element for a preference requires that the creditors received a greater share then they would have received under Chapter 7. In a recent Ninth Circuit case, "the trustee stated that an unsecured creditor was likely to receive between 5% and 20% of his or her claim upon final liquidation of the debtor." *In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 819 F.2d 214 (9th Cir.1987). Assuming a less than 100% distribution, "*any*

payment 'on account' to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made." *In re Lewis W. Shurtleff, Inc.*, 778 F.2d at 1421.

In this case, assuming a less than 100% distribution, the creditors did receive a greater share than through a Chapter 7 liquidation.

Therefore, it appears from the above discussion that all the elements are present to show a preferential transfer of the debtor's interest.

S & O attempts to use *In re Newcomb*, 744 F.2d 621 (8th Cir.1984), as a basis for its argument that the title to the licenses transferred at the time escrow opened which was not within the 90 day period. These cases can be easily distinguished. The fact situations are completely different. In *Newcomb*, the court dealt with an escrow holding funds meant to satisfy a prior judgment in a fact specific situation involving money owed to the government. The trustee then tried to keep the funds in the estate. In this case, the court is simply dealing with a simple bankruptcy and all the usual monies which may or may not belong with the estate. More importantly, in this case, the court is working with a specific interest transferred according to specific state regulations. California has set up a certain board to control the interests in liquor licenses and how they shall be transferred. The *Newcomb* case does not have anything to do with special California laws.

The second issue for consideration involves the propriety of the action taken by the court in refusing to allow Siple to testify on behalf of the creditors. The argument is convincingly laid out by the trustee in his post-trial brief.

The California Rules of Professional Conduct, binding on all members of the State Bar (California Business and Professions Code § 6077) govern the required withdrawal from employment of counsel under specified circumstances. Rule 2–111(A)(4) provides:

[i]f ... a member of the State Bar knows or should know that the member ought

to be called as a witness on behalf of the member's client in litigation concerning the subject matter of such employment, the member may continue employment only with the written consent of the client....

■ Where counsel has himself failed to recognize a violation of the Rules of Professional Conduct and thereby withdraw, it is clearly appropriate to prohibit counsel from testifying at trial. The Rules of Professional Conduct state that it is counsel's responsibility to foresee the possibility of a conflict and withdraw from representation when such withdrawal is in the client's best interest. Courts have consistently held that it is appropriate to testify on behalf of the client rather than continue to represent the client in the proceeding. In *Comden v. Superior Court*, 20 Cal.3d 906, 145 Cal. Rptr. 9, 576 P.2d 971 (1978), the California Supreme Court held:

> When trial counsel foresees the possibility his continued representation of a client may fall within the prohibition of Rule 2–111(A)(4) because he or a member of his firm ought to testify n behalf of such client at trial, he should resole any doubt in favor of preserving the integrity of his testimony and against his continued participation as trial counsel. (See ABA Code of Prof. Responsibility, EC 5–10.) Failing voluntary withdrawal by trial counsel in such situation a trial court is vested with broad discretion to order withdrawal.

*Comden*, at 915–16, 145 Cal.Rptr. 9, 576 P.2d 971.

■ From the inception of these adversary proceedings, Randolph Siple knew of the possibility that his testimony might be needed in these adversary proceedings, yet failed to withdraw from representation of these defendants. Siple's testimony would surely give the appearance of impropriety that Rule 2–111(A)(4) is designed to prohibit. Further, Siple would have to argue his own credibility, which would clearly frustrate the plaintiff's ability to cross-examine him as a witness.

The post-trial brief on this issue by S & O reads in a confusing manner so as to disguise any good argument which may be present. Briefly, S & O says since only the judge and a few uninterested observers were present, no appearances of the court were lost. This type of testimony clearly falls under judicial discretion in allowing it. If the judge feels uncomfortable with the idea, then the judge may prevent it. Additionally, since the judge in a bench trial acts as both the judge and the jury, the judge may be just as adversely affected by this dual role as a lay jury. The other major argument seems to be that since S & O now appear pro bono, there is no monetary conflict. The brief leaves out the very obvious conflict that Siple has a great deal of interest *personally* in the outcome of the case, regardless of his status as attorney. He acts in a variety of capacities in relation to the entire M.B.K. liquidation.

In a class action S & O seeks to enjoin the trustee's actions in recovering preferences. Without the proper motions or certification Siple suddenly claims to represent a class of creditors. This entire concept flies in the face of Federal Rule of Civil Procedure 23 and is absurd.

■ Siple criticizes the trustee for failing to file some suits to recover from creditors. A bankruptcy trustee is not bound to pursue every cause of action but may decide prosecution is not warranted. *Meyer v. Fleming*, 327 U.S. 161, 165–167, 66 S.Ct. 382, 385–86, 90 L.Ed. 395 (1946). The trustee should "make the choice which is most advantageous to the estate." *Id.* at 168, 66 S.Ct. at 386.

## 1. BANKRUPTCY CODE SECTION 348 IS CONSTITUTIONAL

■ S & O alleges that Bankruptcy Code § 348 is unconstitutional because it allows the preference period to remain the same even after conversion of a case from Chapter 11 to Chapter 7. S & O alleges that this violates "do process equal protection and expose facto" [sic] (that is, due process, equal protection, and ex post facto). S & O offers no authority for this proposition. I can find no controlling case law challenging the constitutionality of § 348.

Section 348 states that "[c]onversion of a case ... does not effect a change in the

date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348. In *F & M Marquette National Bank v. Richards,* 780 F.2d 24 (8th Cir.1985), the court dealt with a conversion of a Chapter 11 to a Chapter 7. The new creditors meeting required for the Chapter 7 also gives rise to a new period for filing objections to discharge. The court based this finding on the fact that "filing dischargeability complaints, however, [are] keyed not to the date of the order for relief but to the first date set for the meeting of creditors." *Id.* at 26. Additionally, the court wished to prevent a debtor from fraudulently causing debt discharge by converting and then reconverting its case. *Id.* at 26.

The right at stake in a preference action differs from the right in a dischargeability action. The preference period is determined from the time of the first filing. Due process has been met by notice and at least one hearing. Equal protection and ex post facto are not violated either. The same period applies regardless, and a transfer either falls into that time frame or not. The number of people possibly affected does not expand or contract in a preference period. Improper transfers which occur post-petition can be avoided through other remedies provided by the Code.

Without any persuasive case law to provide § 348 unconstitutional, I will not create a new precedent of constitutional proportions.

## 2. GOOD FAITH USE OF AUTHORITY

■ In reconsideration of the trustee's motion for sanctions, I find that S & O did not use its legal authority in good faith. The motion for sanctions against S & O should be granted based on this finding.

For example, S & O cites *In re Newcomb,* 744 F.2d 621 (8th Cir.1984), for the proposition that payments through the escrow do not qualify as preferences. However, *Newcomb* clearly demonstrates that the meaning of "transfer" within the Bankruptcy Code is closely linked to state laws regarding the interest transferred. The court looks "to the real substance of the interests transferred, not to whether those

interests are referred to as 'legal title' or 'equitable interest.' " *Id.* at 626. Additionally, the facts of the *Newcomb* case are not at all analogous to this case. There, the substance of the escrowed interest related to a transfer which occurred outside of the 90 day preference period and only the technicality of physical transfer remained.

Here, S & O should have known that a liquor license transfer must follow specific ABC rules under California law. S & O admits that the escrow "must comply with state laws...." Even if the attorney was unfamiliar with this area of law, the fact that two escrows and liquor licenses were involved should have alerted him.

Further, *Guy v. Abdulla,* 57 F.R.D. 14 (D.C., N.D.Ohio, E.D.1972), does not support S & O's allegation that the trustee should have brought a class action. *Guy* involved a very specific set of facts where one of the two classes resulted from investigation of the initial class and a Ponzi scheme of real property transfers occurred. The trustee could not learn individual data about all members of the classes.

Procedurally, *Guy* occurred under the Bankruptcy Act of 1898. The trustee had to prove each element of the preference. The required elements included proof that each transferee had reasonable cause to believe the debtor was insolvent. This element was almost impossible to prove and the current Bankruptcy Code allows the trustee to rely on a presumption of insolvency. The *Guy* trustee used the class action procedurally to get around proving these elements for each transferee.

Here, the trustee knows the dates and times of all transfers and brought a separate action against each transferee. This is the customary method of recovery. The policy behind class actions revolves around the idea that one party cannot identify all members of the opposing side or that there are too many members to sue them separately as a practical matter.

No facts in this case justify the use of a class action. The trustee chose to sue 21 transferees. This does not satisfy the numerosity requirement of Federal Rule of Civil Procedure 23. Although the question of whether a preferential transfer or fraud-

ulent conveyance or both occurred is common to all the cases, the resolution is fact specific to each situation. This does not at all lend itself to either the policy or the actual requirements of class actions.

Considering the misapplication of authority by S & O, the motion for sanctions by the trustee will be reconsidered and granted under Rule 9011. S & O and Randolph Siple are jointly and severally directed to pay $3,200 to the attorneys for the trustee to cover the costs of litigating the frivolous complaint to enjoin. The payment shall not be charged to their clients.

This memorandum of decision shall constitute findings of fact and conclusions of law. The trustee should lodge four appropriate judgments plus orders relating to the dismissal and sanctions.